**Sidney L. NASH, Defendant Below, Appellant,**

**v.**

**STATE of Delaware, Plaintiff Below, Appellee.**

**Homer U. WHEAT, Defendant Below, Appellant,**

**v.**

**STATE of Delaware, Plaintiff Below, Appellee.**

Supreme Court of Delaware.

July 25, 1972.

Lawrence M. Sullivan, Public Defender, Wilmington, for Sidney L. Nash, defendant below, appellant.

Joseph A. Rosenthal of Cohen, Morris & Rosenthal, Wilmington, for Homer U. Wheat, defendant below, appellant.

Richard R. Wier, Jr., State Prosecutor, and John P. Daley, Deputy Atty. Gen., Wilmington, for plaintiff below, appellee.

Before WOLCOTT, C. J., and CAREY and HERRMANN, JJ.

HERRMANN, Justice:

In this drug case, we are called upon to decide whether the search and seizure was reasonable, and consonant with the Fourth Amendment, under the standards of Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L. Ed.2d 889 (1968). The defendants were tried and convicted separately upon charges of possession of heroin with intent to sell and possession of a hypodermic syringe. Their appeals have been consolidated.

I.

Near midnight, on the shoulder of a dark and isolated portion of U. S. 13, the defendants were discovered by the State police standing near a parked automobile bearing out-of-state license tags. The defendant Nash was found urinating near the open door on the passenger side of the car; the defendant Wheat was similarly occupied nearby. Beer cans were on top of the car; beer cans and pieces of tissue paper were on the roadside and in front of the driver's seat.

State Trooper O'Day approached Nash, inquired as to what was going on, and peered through the open door into the automobile. He saw a small brown box on the right front floor of the vehicle. The box seemed to the policeman to be similar to boxes containing .32 or .38 caliber training pistols which he had seen several times at the police training academy. O'Day inquired as to the contents of the box, whereupon Nash reached toward the floor of the car. O'Day immediately became "leery" and concerned for his life,[1] quickly reached into the automobile, and seized the box. About the same time, Nash brought forth from the area between the front bucket seats another box, containing food. Upon being asked about the contents of the small brown box, Nash stated that he did not know the contents. O'Day then opened the box, found therein drugs and paraphernalia,[2] and arrested Nash for unlawful possession.

In the meanwhile, after talking to Wheat on the driver's side of the vehicle, State Trooper Hudson arrested him for littering.

Subsequently, both defendants were charged with possession of narcotic drugs with intent to sell, and possession of the syringe. Both defendants moved to suppress the evidence seized; the motions were denied. The propriety of the denial of the suppression motions is the crux of the problem before us.

II.

The problem before us is the effect of the application of the standards of Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868 (1968), to the facts of this case.

The scope of Terry has been recently enlightened by the United States Supreme Court in Adams v. Williams, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972). In Adams, it is stated:

"In Terry this Court recognized that 'a police officer may in appropriate circumstances and in an appropriate man-

---

1. O'Day testified:

"A * * * I was concerned for my life.
"Q You were concerned for your life?
"A Yes, sir.
"Q In what respect?
"A I recognized the box as possibly containing a weapon, a pistol. It was in easy reach of the defendant. He could easily have reached in and gotten a pistol and blown my brains out before I had the opportunity to get the box away from him.
"Q You became concerned about this gun and concerned for your life when you saw the box; is that correct?
"A Yes, sir."

2. The contents of the box were later catalogued as "an eye-dropper, a hypodermic needle, 142 rubber bands, 91 empty glassine bags, 56 glassine bags containing heroin, and 2 larger bags containing heroin."

ner approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest.' * * *. The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, *Terry* recognizes that it may be the essence of good police work to adopt an intermediate response. * * *. A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time. * * *.

"The Court recognized in *Terry* that the policeman making a reasonable investigatory stop should not be denied the opportunity to protect himself from attack by a hostile suspect. 'When an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others,' he may conduct a limited protective search for concealed weapons. * * *. The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence, and thus the frisk for weapons might be equally necessary and reasonable whether or not carrying a concealed weapon violated any applicable state law. So long as the officer is entitled to make a forcible stop and has reason to believe that the suspect is armed and dangerous, he may conduct a weapons search limited in scope to this protective purpose. * * *."

Applying those standards, the United States Supreme Court found reasonable the action of a police officer, based upon an informant's tip, in approaching a parked car, reaching through the window, and seizing a gun from the waistband of a man sitting therein.

In the light of the principles thus established in *Terry* and clarified in *Adams,* we are of the opinion that Trooper O'Day was justified, under all of the circumstances, in reaching into the automobile, seizing the box, and opening it. To be considered in this connection are the specific facts to which the policeman points in justification of his action: the hour, the place, the unusual condition and activities of the defendants, the out-of-state automobile, the suspicious-looking box, and Nash's suspicious action after O'Day inquired about the box. There is nothing in the record to refute the reasonableness of O'Day's suspicions as to the nature and contents of the box, based upon his police training experience. The "specific and articulable facts", pointed to by O'Day, "taken together with rational inferences from those facts, reasonably warrant" the intrusion in this case. Terry v. Ohio, 88 S.Ct. at 1880.

In this connection, the defendants argue that even if the seizure of the box were reasonable, the opening of the box was unreasonable and unnecessary to the officer's safety. There is no merit to this contention. Having the box in his hands, opening it was the only reasonable course of action for the police officer to follow under the circumstances.

The defendants attack O'Day's credibility as to the reasons he gives for seizing the box. They question his assertion of suspicion of the box and its contents, and his assertion of resultant fear for his own safety. The defendants point out that O'Day did not close the car door and did not order Nash away from the car; that O'Day did not "frisk" Nash at the outset; that there was no altercation; that O'Day did not call to Officer Hudson for help or draw his own gun; that after seizing the box, O'Day turned his back on Nash and walked toward the rear of the car; that,

**718**

therefore, O'Day permitted Nash to reach into the glove compartment of the car for cigarettes.

■ As to the officer's suspicion of the box: we are of the opinion that, being engaged as he was in a reasonable investigatory stop, he had sufficient specific facts from which he could reasonably infer, in the light of his experience, that the box and its contents constituted a danger to himself and others.

■ As to the credibility of the officer's testimony of fear for his own safety: we have today held that actual fear by the policeman, for his own safety or the safety of others, is not prerequisite to the reasonableness of a protective *Terry* search; that the admission of such fear is not prerequisite to the admission in evidence of the fruits of such search; that the test under *Terry* is not whether the policeman actually experienced fear, but whether he had good cause, as a reasonably prudent man, to experience fear for himself or others under the circumstances. Brown v. State, Del.Supr., 295 A.2d 575 (1972); compare State v. Culver, Del.Supr., 288 A.2d 279 (1972).

In the instant case, to paraphrase *Terry* and *Adams,* as a "reasonably prudent man in the circumstances", Trooper O'Day was "justified in believing" that Nash was dangerous if he reached the box; he was "warranted in the belief that his safety or that of others were in danger"; he was entitled to the inferences he drew "from the facts in light of his experience", 88 S. Ct. at 1883; he had "ample reason to fear for his safety", 92 S.Ct. at 1924. These conclusions as to justification and reason are sufficient to support a *Terry* search, the absence of actual fear or concern notwithstanding.

Accordingly, we hold that the issue of existence or non-existence of actual fear by Trooper O'Day for his own safety is not relevant to the reasonableness of the protective search undertaken by him in the instant case.

We think that, in the instant case, there was a reasonable protective search incident to a reasonable investigatory stop. Accordingly, it is held that there was no error in the denial of the motions to suppress the evidence.

### III.

The defendant Wheat contends also that as to him, the driver and custodian of the automobile, the evidence was entirely circumstantial and inadequate to support the conviction of possession of the box and its contents.

We are of the opinion that all the evidence, taken together, permits of only one reasonable hypothesis: that the defendant Wheat knew the destination and purpose of the journey on which he and Nash were embarked; and that he knew the related contents of the small box being transported so conspicuously on the floor of the automobile before him. The jury was justified in so finding.

Affirmed.