STATE OF HAWAII, Plaintiff-Appellee, *v.* RICHARD LINCOLN ELDERTS, Defendant-Appellant and HAROLD WESLEY EMMSLEY, Defendant

NO. 7116

SEPTEMBER 23, 1980

RICHARDSON, C.J., OGATA, MENOR, LUM, NAKAMURA, JJ.

OPINION OF THE COURT BY LUM, J.

Defendant-appellant Richard Lincoln Elderts appeals from his judgment of conviction by a jury on four counts of burglary in the second degree.[1] Appellant asserts that the trial court erred in denying his motion to suppress incriminating evidence uncovered by the police through an illegal search of an apartment rightfully occupied by appellant,[2] and his motion for judgment of acquittal because the evidence presented was insufficient to sustain his conviction. We affirm his conviction.

I.

On the issue of the motion to suppress, we consider the factual findings made by the trial judge along with the facts supported by the record.

At about 2:00 o'clock in the morning of November 28, 1977, the resident manager of the Kalakauan Hotel was awakened by the burglary alarm. From his fourth-floor apartment, he observed two men carrying a television set up the lighted stairwell of the three-story Ala Moana Surf Apartments situated across a road from his hotel. After the men reached the third-floor landing, they proceeded toward the mauka-corner apartment (Apartment 31).

Suspecting burglary, the manager called for the police. He checked the lower floors of his hotel and found that several

---

[1] Section 708-811 of the Hawaii Revised Statutes states:

(1) A person commits the offense of burglary in the second degree if he intentionally enters or remains unlawfully in a building with intent to commit therein a crime against a person or against property rights.

[2] Appellant contends that these actions violate rights guaranteed by the fourth amendment of the United States Constitution and article I, section 7 of the Hawaii State Constitution.

apartments had been burglarized and four television sets were missing.

Approximately 10 to 15 minutes after the manager's telephone call, the police officers arrived. The manager then told the police what happened. The police proceeded to Apartment 31. They knocked repeatedly on the door, and there was no response. After several minutes, the neighbor from the adjoining unit (Apartment 32) appeared and told the officers that the tenant of Apartment 31 was presently on Maui.

The neighbor then allowed the police to enter his apartment. The police were able to observe the adjacent balcony of Apartment 31 and saw that the lanai door was partially open. The police suspected that an intruder had entered the apartment since the tenant was on Maui. One of the officers then climbed onto the adjacent balcony. He knocked several times and announced he was a police officer. Receiving no response, the officer pushed open the door and entered the apartment with the express purpose of searching for the suspects. With the aid of a flashlight, the officer immediately found four television sets in the bedroom and subsequently discovered appellant.

At the pre-trial motion to suppress, the tenant of Apartment 31 testified that she had previously given permission to appellant to enter her apartment. The court thereafter ruled that since appellant had a legitimate right to be in Apartment 31, he "had the right for reasonable expectation of privacy."

The court, however, ruled that the circumstances of this case justify the warrantless search; "there was a clear showing of probable cause that the crime of burglary had been committed and a strong reason to believe that the suspects of the crime were held up in Apartment 31. The attempt to secure a search warrant might well have caused the suspects to escape; there was 'urgent necessity' for immediate entry."

II.

The State urged this court to find that appellant was not entitled to a reasonable expectation of privacy. In view of the

trial court's finding of fact that appellant was given permission by the owner to enter her apartment, we agree with the court's conclusion that appellant had a legitimate expectation of privacy. *See State v. Nabarro*, 55 Haw. 583, 525 P.2d 573 (1974). Findings of fact of a trial judge will not be set aside unless clearly erroneous. *See State v. Patterson*, 58 Haw. 462, 571 P.2d 745 (1977).

However, we need to examine the second aspect of the court's ruling — whether the police had conducted the warrantless search within constitutional bounds. It is well established in this jurisdiction that warrantless searches are unreasonable unless they fall within one of the specifically established and well delineated exceptions. *State v. Kender*, 60 Haw. 301, 307, 588 P.2d 447, 451 (1978).

The use of the phrase "urgent necessity" by the court was an apparent reference to the phrase "hot pursuit" coined by the U.S. Supreme Court and used by other courts, seemingly as another exception to the warrant requirement. *See Warden. v. Hayden*, 387 U.S. 294 (1967); *United States v. Santana*, 427 U.S. 38 (1976); *United States v. Scott*, 520 F.2d 697 (9th Cir. 1975); *People v. Bledsoe*, 252 C.A.2d 727, 60 Cal. Rptr. 703 (1967), *cert. denied*, 392 U.S. 932 (1968).

We are not persuaded that "hot pursuit" constitutes another well defined exception to the warrant requirement. We view "hot pursuit" as merely a criterion to be considered in determining if, given probable cause, exigency exists to justify a warrantless search.

In *Warden*, *supra* at 298, police received information of an armed holdup. The suspect was seen entering his home. Within minutes the police arrived, entered the suspect's home and seized incriminating evidence. The Supreme Court upheld the warrantless entry, holding that "the exigencies of the situation made that course imperative," citing *McDonald v. United States*, 335 U.S. 451, 456 (1948).

The court justified its findings by stating the fourth amendment does not require police officers to delay in the course of an investigation if to do so would gravely endanger their lives or the lives of others. "Speed here was essential, and only a thorough search of the house for persons and

weapons . . . which could be used against them or to effect an escape.''

In *United States v. Santana, supra,* the court upheld a warrantless entry into suspect's house to effectuate her arrest. The suspect was first seen in a public place by the police but as the officers approached her, she retreated into the vestibule of her house. The court stated:

This case, involving a true "hot pursuit,"[3] is clearly governed by *Warden*; the need to act quickly here is even greater than in that case while the intrusion is much less. The District Court was correct in concluding that "hot pursuit" means some sort of a chase, but it need not be an extended hue and cry "in and about [the] public streets." The fact that the pursuit here ended almost as soon as it began did not render it any the less a "hot pursuit" sufficient to justify the warrantless entry into Santana's house. Once Santana (suspect) saw the police, there was likewise a realistic expectation that any delay would result in destruction of evidence. (Citation omitted.)

*Id.* at 42-43.

The crime herein was committed in the early morning. It is a felony and carries with it imprisonment. Within 10-15 minutes after the phone call, the police arrived on the scene. Although no guns or weapons were seen by any witness, there was no way for the police to safely assume that such was the case. It was still dark, so the suspects had the benefit of darkness to escape if they chose to do so. The officers were given sufficient information to know that the suspects were in Apartment 31. When the officers knocked repeatedly on the apartment door, the suspects were alerted that the authorities were close on their heels. Escape or resistance, by violence or other means, may have been on their minds. Obviously, by their conduct, they had no intent to surrender.

---

[3] The U.S. Supreme Court footnoted the following:

*Warden* was based upon the "exigencies of the situation," 387 U.S., at 298, and did not use the term "hot pursuit" or even involve a "hot pursuit" in the sense that that term would normally be understood. That phrase first appears in *Johnson v. United States,* 333 U.S. 10, 16 n. 7 (1948), where it was recognized that some element of a chase will usually be involved in a "hot pursuit" case.

The police were then told that the tenant was away on Maui. There was a distinct possibility that the suspects had likewise broken into the apartment and had committed another crime. Upon seeing the lanai door partially open, the officer again knocked and announced he was a police officer. Receiving no response, he opened the door, entered, and saw the televisions and apprehended the suspects. The need to act quickly was essential. Under the circumstances, the constitution does not require the police officers to break off their pursuit to seek a warrant and chance violence or escape by the suspects. It was a reasonable intrusion for the officer to enter the apartment. To do otherwise would have been poor police work. *See State v. Goudy*, 52 Haw. 497, 479 P.2d 800 (1971). We hold that the police conduct was reasonable; and that since the police had probable cause and exigent circumstances, the constitution permits the warrantless search.

### III.

Appellant also argues that the trial court erred in rejecting his motion for judgment of acquittal.

Appellant contends that the State has shown neither of the two elements necessary to establish guilt under HRS § 708-811: (1) that appellant entered the four burglarized rooms in the Kalakauan Hotel and (2) that he did so "with the intent to commit a crime against a person or against property rights."

The standard for determining whether the evidence is sufficient to sustain a judgment denying a motion for judgment of acquittal was stated by this court in *State v. Rocker*, 52 Haw. 336, 346, 475 P.2d 684, 690 (1970):

> The true rule, therefore, is that a trial judge, in passing upon a motion for directed verdict of acquittal, must determine whether upon the evidence, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact, a reasonable mind might fairly conclude guilt beyond a reasonable doubt.

Despite the fact that the State could provide no direct evidence which placed appellant and his companion at the

scene of the burglaries, there was sufficient circumstantial evidence which permitted the jury to fairly infer that they, indeed, committed the crimes. On the basis of the recounted facts, we conclude the trial court was not in error to deny the motion.

Affirmed.

*Nolan Chock (Alvin T. Ito, Lorna A. Nishimitsu* and *Carolyn Bain* on the briefs), Deputy Public Defenders, for defendant-appellant.

*Arthur E. Ross (D. Sandra Chun* on the brief), Deputy Prosecuting Attorneys, for plaintiff-appellee.