**UNITED STATES of America, Appellee,**

v.

**Henry James JOHNSON, Appellant.**

**No. 80–1509.**

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 17, 1980.

Decided Nov. 18, 1980.

Daniel M. Scott, Federal Public Defender, Minneapolis, Minn., for appellant.

James A. Morrow, Asst. U. S. Atty., Minneapolis, Minn., for appellee.

Before HEANEY, ADAMS * and STEPHENSON, Circuit Judges.

STEPHENSON, Circuit Judge.

Defendant Johnson appeals from his conviction and sentence by the district court,[1] sitting without a jury, on two counts charging possession of a sawed–off shotgun in violation of 26 U.S.C. §§ 5861(d), 5871, and illegal possession of the same firearm after having previously been convicted of a felony in violation of 18 U.S.C.App. § 1202(a)(1). The sole issue on this appeal is whether the district court erred in refusing to suppress [2] the sawed–off shotgun seized without a warrant prior to defendant's arrest and in refusing to suppress statements made by defendant after his arrest on the firearms charge. We affirm the conviction.

The record discloses that Minneapolis Police Officers Lindman and Howell were dispatched to the Martin Gas Station in Minneapolis, Minnesota, during the forenoon of February 15, 1980, in response to a telephone call for police assistance made by the gas station manager, Mrs. Arlene Berg. Mrs. Berg had been the victim of robberies on prior occasions. The dispatcher warned the officers "to watch ourselves."

On the morning indicated, defendant entered the gas station wearing a blue Air Force snorkel jacket with the hood tied around his face in such a fashion that only his eyes and nose were visible. He was carrying a green waterproof type duffel bag tied closed at the top, except for a cloth–covered object protruding therefrom about four or five inches. Defendant placed the bag near his feet and commenced making simulated telephone calls from a pay telephone located on the wall approximately two or three feet from the entrance.

The calls appeared to the manager to be simulated because defendant deposited only a five–cent piece into the pay telephone and during one of the calls the telephone rang with an incoming call for the manager. Defendant, when making the calls, did not pull back his snorkel hood of his jacket but placed the telephone inside the hood. The manager further noted that defendant kept his gloves on during this period, appeared to be watching out the door and periodically looked at the manager, who was working at the counter. It was quite warm inside the station.

Mrs. Berg, fearful of a robbery, managed to call her husband who relayed the message to the police which resulted in the dispatch of Officers Lindman and Howell to the scene. Upon arrival, Officer Lindman immediately entered the station while Officer Howell, who was not wearing a bullet–proof vest, remained outside. Officer Lindman visited with the manager at the end of the counter approximately twenty feet from where defendant stood near the door. The manager described what had taken place with respect to defendant as set out above and indicated her apprehension.

Officer Lindman then approached defendant who was still standing by the phone, took him by the shoulder and asked him to step outside the station. Officer Howell then began a "pat–down" search of the defendant. Officer Lindman then reached or stepped inside the door of the station to seize the duffel bag that was sitting on the floor by the pay telephone. He grabbed the cloth–covered object protruding from the top of the bag, which he believed to be a gun. He proceeded to remove the cloth from the protruding object and found it to be the wooden stock of

---

* The Honorable Arlin M. Adams, United States Circuit Judge for the Third Circuit, sitting by designation.

1. The Honorable Diana E. Murphy, United States District Judge for the District of Minnesota, presiding, imposed a sentence of eighteen months imprisonment to run concurrently on the two counts.

2. The suppression hearing was conducted by United States Magistrate Boline. His findings of fact and recommendations to deny the motion to suppress were adopted by the district court after a *de novo* review of the record. The facts are largely undisputed.

a weapon. He thereupon withdrew the weapon from the bag.[3]

Officer Lindman displayed the weapon to Officer Howell. Defendant was advised he was under arrest. Officer Howell, with the assistance of two other officers who had arrived on the scene, completed the search of defendant. No other weapons were found.

Defendant was handcuffed, placed in the squad car and advised of his *Miranda* rights. Thereafter defendant orally admitted the weapon was his and later gave a written statement admitting possession and ownership of the weapon.

We must determine whether the warrantless search of the duffel bag was in violation of the Fourth Amendment. We commence by recognizing that the Supreme Court "has interpreted the Amendment to include the requirement that normally searches of private property be performed pursuant to a search warrant issued in compliance with the Warrant Clause." *Arkansas v. Sanders*, 442 U.S. 753, 758, 99 S.Ct. 2586, 2590, 61 L.Ed.2d 235 (1979). However, there have been some carefully delineated exceptions to the warrant requirement. "[I]n general, they serve the legitimate needs of law enforcement officers to protect their own well–being and preserve evidence from destruction." *United States v. United States District Court*, 407 U.S. 297, 318, 92 S.Ct. 2125, 2137, 32 L.Ed.2d 752 (1972); *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

In the instant case, "our inquiry is a dual one—whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *Terry v. Ohio, supra,* 392 U.S. at 19–20, 88 S.Ct. at 1879.

The initial action by the officer, although objected to, is not seriously challenged by defendant. The information relayed to Officer Lindman by Mrs. Berg concerning the suspicious nature and actions of defendant, supplemented by the officer's own observations of defendant, were sufficient to warrant the district court's finding and conclusion that the "seizure" of the defendant and the limited "pat–down" search of his person were justifiable. It was reasonable for Officer Lindman to suspect from the circumstances that the defendant was about to engage in a robbery and thus was armed. This posed a threat to the officer's safety which justified the initial seizure and pat–down search.

The "search" of the duffel bag is a closer question. While Officer Howell was conducting the pat–down search of defendant, Officer Lindman "opened the door again, reached back inside and grabbed the duffel bag."[4] The bag was two or three feet inside the door. In doing so he grabbed hold of a cloth–covered object protruding four or five inches from the top of the bag. He concluded he was holding the stock of a sawed–off gun and removed the cloth and confirmed it was a gun stock. He pulled it from the duffel bag and determined it was an illegal weapon–a sawed–off shotgun. Defendant was then placed under arrest for possession of an illegal weapon.

Defendant contends that the warrantless search and seizure of the duffel bag was unreasonable, without probable cause and lacking in any exigent circumstances and therefore the shotgun must be suppressed under *United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977) and its progeny, including, *Arkansas v. Sanders, supra*, 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979) and *United States v. Benson*, 631 F.2d 1336 (8th Cir. 1980). We are persuaded that the facts in the instant

---

3. Officer Lindman testified, *inter alia*, "The amount that I had felt and I had observed when I grabbed the bag and grabbed the stock of the gun, led me to believe that what I had was, in fact, an illegal weapon, either a sawed–off shotgun or a sawed–off rifle."

4. There was some conflict in the testimony. Officer Lindman testified he "reached back inside." The magistrate's findings included the expressions "stepped back inside" and "reached back inside."

case are such that suppression is not mandated.

In *United States v. Benson, supra,* at 1338, this court noted that, in reliance upon *United States v. Chadwick, supra,* or *Arkansas v. Sanders, supra,* or both, the courts have held illegal the warrantless searches of a variety of types of containers associated with personal luggage including a duffel bag. (Citing *United States v. Johnson,* 588 F.2d 147 (5th Cir. 1979)). Our court further held that absent exigent circumstances, the search of an unlocked tote bag without a warrant violated the Fourth Amendment. Exigent circumstances did not exist because at the time the bag was searched it was clearly within the exclusive control of the officer and there was no longer any danger that the arrestee might gain access to the bag to destroy evidence or grab a weapon.

In the instant case, we are persuaded that exigent circumstances did exist which warranted the seizure of the duffel bag and the removal from it of the sawed–off shotgun. We are mindful that since there was here a *Terry* search, its sole justification "is the protection of the police officer and others nearby, and it must therefore be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer." *Terry v. Ohio, supra,* 392 U.S. at 29, 88 S.Ct. at 1884. It is reasonable to conclude that such an intrusion, in addition to a frisk of the person, would ordinarily include "the area 'within his immediate control'–construing that phrase to mean the area from within which [the person being searched] might gain possession of a weapon * * *. *Chimel v. California,* 395 U.S. at 763, 89 S.Ct. at 2040." *United States v. Chadwick, supra,* 433 U.S. at 14, 97 S.Ct. at 2485.

In our review we consider the facts as they existed just prior to the seizure of the duffel bag and the removal from it of the gun. The magistrate found that while Officer Howell was conducting the *Terry* search of defendant's person, Officer Lindman stepped or reached inside the station door and grabbed hold of the object that was protruding four or five inches from the top of the duffel bag and immediately felt what he reasonably believed to be the stock of a gun. He removed the cloth covering and verified that it was a gun stock. He then pulled the weapon from the duffel bag. Defendant's arrest followed.

We conclude that the accessibility of the weapon to defendant who was being patted down within three or four feet of the duffel bag brings it within the "immediate control" doctrine of *Chimel v. California, supra,* 395 U.S. at 762–63, 89 S.Ct. at 2039–2040. This was not a warrantless search incident to an arrest but the analogy is appropriate. Officer Lindman had reasonable grounds for believing that criminal activity was afoot and that the defendant was armed and dangerous. The purpose of the search and seizure was protective. The safety of the officers and others might well be endangered. The limited intrusion of removing the weapon from the duffel bag was warranted under the circumstances. *Terry v. Ohio, supra,* 392 U.S. at 30, 88 S.Ct. at 1884–1885. Officer Lindman did not conduct a general exploratory search for whatever evidence of criminal activity he might find. This would not be justified. *See Chimel v. California, supra,* 395 U.S. at 762–63, 89 S.Ct. at 2039–2040.

It is our view that the illegal weapon seized from defendant's duffel bag was properly admitted in evidence. Defendant's contention that his arrest and subsequent admission as to ownership of the weapon should have been suppressed as fruits of an illegal arrest under *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), was based solely on his claim that the search and seizure was illegal. No further discussion of this issue is required in view of our holding that the search and seizure was constitutionally permissible.

Affirmed.