STATE OF HAWAII, Respondent-Appellant, *v.* LARRY JAMES ORTIZ, Petitioner-Appellee

NO. 8636

(CRIMINAL NO. 56185)

MAY 23, 1984

LUM, C.J., NAKAMURA, PADGETT,
HAYASHI AND WAKATSUKI, JJ.

OPINION OF THE COURT BY HAYASHI, J.

We granted certiorari in this case to determine whether a search

warrant was required before a police officer opened a knapsack made of thin material through which he felt, after lawfully seizing the sack, what seemed to be the butt of a handgun. The trial court suppressed the gun, ruling that the officer was not entitled to open the knapsack once it was removed from the immediate control of the defendant. The Intermediate Court of Appeals reversed, upholding the search under a "plain feel" rule. *State v. Ortiz,* 4 Haw. App. 143, 662 P.2d 517 (1983). We affirm the intermediate court's result but vacate its "plain feel" ruling; instead we find that the warrantless search here was a valid protective weapons search under *Terry v. Ohio,* 392 U.S. 1 (1968) and its progeny.

On August 12, 1981, at approximately 2 o'clock in the morning, Officer Brad Bennett was driving alone in the Wahiawa business area in his police car. He observed defendant Ortiz carrying a knapsack across an empty parking lot adjacent to some business establishments. When Ortiz saw the police car he ran to the side of one of the buildings. Bennett drove into the parking lot, exited, and found Ortiz hiding next to some trash cans and boxes, seated on the ground with his knapsack about six inches to his right.

Bennett approached Ortiz and asked him what he was doing there. Ortiz responded that he didn't know. When asked by Bennett whose knapsack it was, Ortiz answered it was his, but when asked what was in it, he responded, "Nothing" and grabbed for the knapsack with his right hand. Feeling "something was wrong,"[1] Bennett reached down and took the sack away from Ortiz, immediately feeling "what seemed like a butt to a handgun" through the thin fabric. Bennett unzipped the bag and verified that it contained a handgun and holster. He then placed Ortiz under arrest and took Ortiz and the gun to the police station. At the station Bennett examined the gun and found it was loaded. Ortiz was subsequently indicted for possession of a firearm by a felon in violation of Hawaii Revised Statutes (HRS) § 134-7(b).

Prior to trial Ortiz moved to suppress the handgun, contending that once a law enforcement officer reduces personal property to his possession, the officer may not search the property either as

---

[1] Bennett testified he reached for the knapsack because of Ortiz's "suspicious behavior at that time, the answers he was giving me" and the "[e]arly morning hours, he had no right to be there as far as I was concerned."

incident to a valid investigative stop, *see e.g., Terry v. Ohio,* 392 U.S. 1 (1968) or as incident to a lawful arrest, relying on *United States v. Chadwick,* 433 U.S. 1 (1977) and *State v. Jenkins,* 62 Haw. 660, 619 P.2d 108 (1980). The State sought to justify the warrantless search under several exceptions to the warrant requirement: as a protective search for weapons under *Terry,* as incident to an arrest, and under a "plain feel" or "plain touch" analog of the "plain view" exception.

The trial court suppressed the gun. In its modified findings, the court concluded (1) Officer Bennett made a valid stop to question Ortiz; (2) Ortiz's claimed ignorance and furtive reach for the bag gave Bennett "reason to believe that criminal activity was afoot, and that defendant might be armed and dangerous;" (3) Bennett properly seized the knapsack even though he lacked probable cause to make an arrest; (4) when Bennett felt the gun butt he then had probable cause to arrest Ortiz; and (5) "once the bag was removed from the immediate control of the defendant Ortiz, that Officer Bennett exceeded the scope of the search incident to arrest, and he at that time violated defendant's rights under the Fourth Amendment,"[2] citing *State v. Kaluna,* 55 Haw. 361, 520 P.2d 51 (1974).

On appeal, the Intermediate Court of Appeals held (1) Ortiz had a reasonable expectation of privacy in the handbag; (2) Bennett's initial stop of Ortiz and seizure of the knapsack were valid under *Terry;* (3) the search was an invalid search incident to arrest under *Kaluna* and *State v. Jenkins,* 62 Haw. 660, 619 P.2d 108 (1980) "because the knapsack was in Bennett's exclusive control when it was searched," 4 Haw. App. at 159, 662 P.2d at 529; but (4) the search was valid under the "plain feel" doctrine, citing *United States v. Ocampo,* 650 F.2d 421 (2d Cir. 1981). We granted certiorari to consider the wisdom of recognizing yet another exception to the warrant requirement.

---

[2] Contrary to the court's holding, there is no question the search was valid under the Fourth Amendment to the federal constitution. *See, Michigan v. Long,* ____ U.S. ____, 103 S. Ct., 3469, 3481 (1983); *New York v. Belton,* 453 U.S. 454, 460 (1981); *Adams v. Williams,* 407 U.S. 143 (1972). In *Kaluna,* however, we noted that then article I, section 5 (now article I, section 7) of our Hawaii constitution may in some instances extend greater protection against warrantless searches than the Fourth Amendment. 55 Haw. at 369, 520 P.2d at 58-59. Because of the trial court's reliance on *Kaluna,* we view its suppression of the handgun as a ruling under article I, section 7 of the Hawaii constitution and review it accordingly.

## I.

We begin our discussion with the principle that warrantless searches are presumptively unreasonable unless they fall within a specifically-established and well-delineated exception to the warrant requirement. *Jenkins,* 62 Haw. at 662, 619 P.2d at 110; *State v. Elderts,* 62 Haw. 495, 498, 617 P.2d 89, 92 (1980); *State v. Kender,* 60 Haw. 301, 307, 588 P.2d 447, 451 (1978). The exception we find applicable here is the protective search for weapons incident to a valid investigative stop, first announced in *Terry,* 392 U.S. at 30-31. Because there is no question that the initial stop of Ortiz and seizure of his knapsack were valid,[3] the only issue presented to us for decision is the validity of the trial court's conclusion that a weapons search of the knapsack was improper once it was removed from Ortiz's immediate control.

As noted in *Terry,* a protective weapons search must be "reasonably related in scope to the circumstances which justified the interference in the first place." 392 U.S. at 20. "[A] seizure lawful at its inception can nevertheless violate the Fourth Amendment because its manner of execution unreasonably infringes possessory interests protected by the Fourth Amendment's prohibition on 'unreasonable seizures.'" *United States v. Jacobsen,* ____ U.S. ____,

---

[3] Ortiz conceded their validity in his brief to this court:

[A]t that moment, given the circumstances and Appellee's behavior, it was reasonable for Bennett to believe that criminal activity may be afoot and that Appellee may be armed. Bennett's seizure of the knapsack from Appellee's possession and control was therefore appropriate under the circumstances. Failure to do so would have been poor police work by an officer in Bennett's situation.

Defendant's Answering Brief at 6. At oral argument, however, Ortiz's counsel attempted to repudiate this concession. Even if we were to allow this change of position, we would still agree with the trial court that Officer Bennett properly stopped Ortiz to question him and subsequently was justified in seizing the knapsack. An investigative stop is proper when the facts warrant an objectively reasonable belief that criminal activity may be afoot. *State v. Melear,* 63 Haw. 488, 493, 630 P.2d 619, 624 (1981); *State v. Madamba,* 62 Haw. at 456, 617 P.2d at 78; *State v. Barnes,* 58 Haw. at 338, 568 P.2d at 1211. Here, Ortiz was in a business district at two o'clock in the morning and ran away after seeing Officer Bennett's police car. Officer Bennett was therefore entitled to stop and question Ortiz. When Ortiz grabbed for his knapsack after denying it contained anything, Officer Bennett's suspicion of criminal activity was justifiably heightened and he properly seized the knapsack. We would not require him to wait until Ortiz pulled the gun out of the knapsack and perhaps fired it before acting to protect himself.

104 S. Ct. 1652, 1662 (1984). The reasonableness of a weapons search is determined by balancing the State's interest in searching against the individual's interest in freedom from unreasonable government intrusions. *Terry*, 392 U.S. at 21; *see also, Jacobsen*, 104 S. Ct. at 1662-63: *United States v. Place*, ___ U.S. ___, 103 S. Ct. 2637, 2642 (1983).

Here, Ortiz argued and the trial court agreed that once Officer Bennett had the knapsack in his hand, he should have taken Ortiz and the unopened knapsack to the police station and there obtained a search warrant. Two strong interests, however, supported Officer Bennett's immediate search of the knapsack. First and foremost, a dangerous weapon was involved. Second, without opening the knapsack he may not have had the requisite probable cause to arrest Ortiz and obtain a search warrant and thus may have had to return the knapsack to Ortiz unexamined.

### A.

The hallmark of the protective weapons search sanctioned in *Terry* is the probable presence of a dangerous weapon.[4] Because a weapon is involved, the search need not be preceded by probable cause and a warrant if, from the specific conduct of the defendant, from reliable information, or from attendant circumstances, the police officer reasonably infers the person stopped is armed and presently dangerous. *State v. Madamba*, 62 Haw. 453, 457, 617 P.2d 76, 78 (1980); *State v. Ward*, 62 Haw. 459, 462, 617 P.2d 565, 567 (1980); *State v. Barnes*, 58 Haw. 333, 338, 568 P.2d 1207, 1212

---

[4] In this case Officer Bennett had a strong firsthand suspicion the knapsack contained the most dangerous of weapons, a handgun. This fact distinguishes the present case from other cases involving *Terry* searches where the facts did not support an objectively reasonable belief the detainee was armed. *See, e.g., State v. Barnes*, 58 Haw. 333, 568 P.2d 1207 (1977); *State v. Onishi*, 53 Haw. 593, 499 P.2d 657 (1972); *compare, State v. Madamba*, 62 Haw. 453, 617 P.2d 76 (1980); *State v. Ward*, 62 Haw. 459, 617 P.2d 565 (1980) (bulge beneath shirt raised reasonable suspicion detainee was armed and therefore *Terry* search valid); *State v. Kea*, 61 Haw. 566, 606 P.2d 1329 (1980). In this respect *Kaluna* is also inapposite. In *Kaluna* we held a warrantless search of a small folded tissue packet was improper because it almost certainly did not contain a weapon, contrary to the facts of this case. We did note in *Kaluna*, however, that if the concealed item had been a pistol instead of a small tissue packet a warrantless search would have been entirely proper. 55 Haw. at 370, 520 P.2d at 59. Thus, the present case is akin to *Terry* (gun felt during frisk admissible), while *Kaluna* was similar to *Terry's* companion case, *Sibron v. New York*, 392 U.S. 40 (1968) (glassine envelope found during frisk inadmissible).

(1977); *State v. Uddipa,* 3 Haw. App. 415, 419, 651 P.2d 507, 510 (1982). The search is judged by an objective standard of reasonableness, taking into account the totality of the circumstances. *See, Uddipa,* 3 Haw. App. at 418-19, 651 P.2d at 510.

In the present case, there are specific facts which support Bennett's objectively reasonable belief that Ortiz was armed and a search of the knapsack was necessary for his own protection: (1) Ortiz had made a quick grab for his allegedly empty knapsack; (2) Bennett was one-on-one with Ortiz, *c.f., Adams v. Williams,* 407 U.S. 143, 147 (1972); (3) it was late at night, *cf., Adams, supra; State v. Kea, supra;* (4) Bennett had no idea whether Ortiz had a hidden confederate who might suddenly appear;[5] and (5) after feeling what seemed like a gun butt Bennett had a strong firsthand suspicion the knapsack contained a gun. Taken together, these facts support Officer Bennett's legitimate interest in a protective search of Ortiz's knapsack. *Accord, State v. Madamba,* 62 Haw. at 458, 617 P.2d at 79; *State v. Ward,* 62 Haw. at 462-63, 617 P.2d at 567; *State v. Kea,* 61 Haw. at 569, 606 P.2d at 1332; *see also, Nash v. State,* 295 A.2d 715, 717 (Del. 1972) (officer seized and opened suspected gun case after detainee reached for it; held: opening the case "was the only reasonable course of action for the police officer to follow").

### B.

Moreover, without searching the knapsack Bennett was in a catch-22 situation: if he arrested Ortiz and seized the knapsack on a suspicion it contained an unlicensed gun he might have made an illegal arrest and seizure on less than probable cause, but if he returned the bag unopened to Ortiz he put his life in danger. The only safe thing to do was open the knapsack, verify its contents, and arrest Ortiz.

Although the trial and intermediate courts thought Bennett had probable cause to arrest Ortiz the instant he suspected he felt a gun butt, we are not so certain. Bennett could not be positive the knapsack contained a gun until he opened it. Indeed, Ortiz's coun-

---

[5] In contrast, in *Jenkins* the search took place on a highway where the officers could be reasonably sure that accomplices would not drive up and attack. Likewise, in *Kaluna* the search took place in a police station where the officer was reasonably safe from blindsided attack.

sel argued this point at the suppression hearings.[6] Furthermore, it is not illegal in Hawaii to carry a concealed gun if the carrier has a license. *See*, HRS § 134-9 (Supp. 1983). Thus, prior to opening the knapsack it is likely Bennett had grounds for a reasonable inference that Ortiz was armed rather than probable cause to believe Ortiz was committing a crime.

Given the closeness of the question we find Bennett had a legitimate interest in searching the knapsack. Police officers need not risk a shot in the back by returning containers which they reasonably suspect contain a dangerous weapon but may lack probable cause to seize. *See*, 3 LaFave, *Search and Seizure* § 9.4(d) at 132-133 & n.128 (1978). As the United States Supreme Court has noted, "the policeman making a reasonable investigatory stop should not be denied the opportunity to protect himself from attack by a hostile suspect." *Adams v. Williams*, 407 U.S. at 146.

## C.

Against Officer Bennett's interest in searching the knapsack, we must weigh Ortiz's interest in freedom from unreasonble police intrusions. A knapsack is, generally speaking, a recognized repository for personal effects and therefore deserves constitutional protection. *See*, *State v. Joyner*, 66 Haw. 543, 546 (1983); *Jenkins, supra*. However, once Officer Bennett had properly seized the knapsack and inadvertently felt what he thought might be a gun, his further act of opening it was a *de minimis* intrusion on Ortiz's privacy. *Cf., Jacobsen*, 104 S. Ct. at 1663 (field test of cocaine was *de minimis* intrusion). To a large extent, Ortiz's privacy interest in his knapsack was lost when, as a result of his own threatening actions, Officer Bennett properly seized the knapsack and felt the outline of its contents. At that point, opening the knapsack itself, although a "search," was only a minimal further infringement on Ortiz's right to keep the gun concealed. Officer Bennett's legiti-

---

[6] Ortiz's counsel argued: "As far as we're concerned, if the police officer felt a butt on the knapsack, it could have been a toy gun, we don't know. . . . Once the police officer felt the bag, he might have felt a butt of a gun. OK. It could have been a toy gun; it might have been a real gun." Later, the defense counsel reiterated this point: "Officer Bennett testified that he did feel the butt of a handgun, but we don't know for sure whether it was a real gun. It could have been anything else. It could be a toy gun."

mate interests in opening the knapsack therefore greatly outweighed Ortiz's rights in preventing the intrusion and the search was reasonable.

Finally, excluding Ortiz's gun from evidence would do little to protect the average citizen from unreasonable police searches. As noted in *Terry*, 392 U.S. at 13-15, an encounter between a police officer and an armed detainee is a situation in which the exclusionary rule has little deterrent effect; where an officer is threatened by a concealed weapon, self-protection provides far more motivation to search than the exclusionary rule could ever deter. Rather than apply the exclusionary rule in a context where it would force police to choose between inordinate personal risk and the constitution, we find Officer Bennett's actions were reasonable and Ortiz's gun therefore should not be suppressed.

## II.

A separate issue is whether Officer Bennett's search of the knapsack was invalid because it was not on Ortiz's person when Bennett searched it. The range of a *Terry* search is limited to "action [that] is required for the protection of the officer and others nearby." *Madamba*, 62 Haw. at 457, 617 P.2d at 78. The present case raises the issue of to what extent the police may go beyond the detainee's person and make a protective weapons search of the area or a container nearby.[7] Again, the proper guideline is an objective standard of reasonableness: "Would the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?" *Terry*, 392 U.S. at 22.

In the search incident to arrest context, we have limited searches to the area within the arrestee's conceivable grasp, and

---

[7] Some have argued that once a container is separated from a detainee it should not be subject to a protective weapons search. Note, 10 ARIZ. L. REV. 419, 430 (1968); Comment, 6 HOUSTON L. REV. 333, 347 (1968). We disagree. The critical factor is not whether the container is physically separate from the detainee, but whether it is within the detainee's conceivable grasp. For example, in *Terry* the officer felt a gun in the suspect's coat pocket, took the coat off and removed the gun from the pocket. 392 U.S. at 7. The United States Supreme Court found the officer properly removed the gun from the coat pocket even though the coat was physically separate from the suspect. 392 U.S. at 29-30.

have invalidated searches when the item or area searched was beyond the arrestee's reach, or within the exclusive control of the police. *State v. Haili,* 63 Haw. 553, 632 P.2d 1064 (1981); *State v. Jenkins,* 62 Haw. 660, 619 P.2d 108 (1980); *State v. Dias,* 52 Haw. 100, 470 P.2d 510 (1970). For example, in *Jenkins,* we invalidated a search of a knapsack when it was within the officer's exclusive control. The search of Jenkins' knapsack, located in his van, took place while he was outside near the front of the van, under arrest, and guarded by another policeman. Thus, his knapsack inside the van was clearly beyond his possible reach.

We hold now that the same limitation applies to protective weapons searches: if the police have an objectively reasonable belief a detainee is armed, they may make a protective weapons search of the area or a container reasonably within the detainee's conceivable grasp. *Accord, United States v. McClinnhan,* 660 F.2d 500 (D.C. Cir. 1981) (closed case); *United States v. Johnson,* 637 F.2d 532 (8th Cir. 1980) (duffel bag); *United States v. Foster,* 584 F.2d 997 (D.C. Cir. 1978), *cert. denied,* 439 U.S. 1006 (paper bag); *United States v. Vigo,* 487 F.2d 295, 298 (2d Cir. 1973) (purse); *United States v. Poms,* 484 F.2d 919, 920-21 (4th Cir. 1973) (shoulder bag); *United States v. Riggs,* 474 F.2d 699, 704-05 (2d Cir. 1973) (camera case); *United States v. Berryhill,* 445 F.2d 1189, 1193 (9th Cir. 1971) (purse); *Bromwell v. State,* 427 A.2d 884 (Del. 1981) (cardboard box); *Nash v. State,* 295 A.2d 715 (Del. 1972) (small box); *Henighan v. United States,* 433 A.2d 1059 (D.C. App. 1981) (purse); *State v. Thompson,* 3 Kan. App. 2d 426, 596 P.2d 174 (1979) (purse); *Williams v. State,* 19 Md. App. 204, 310 A.2d 593, 598 (1973) (paper bag); *People v. Pugach,* 15 N.Y. 2d 65, 255 N.Y. Supp. 2d 833, 204 N.E.2d 176, 178 (1964), *cert. denied,* 380 U.S. 936 (briefcase); *People v. Bowles,* 29 App. Div. 2d 996, 289 N.Y. Supp. 2d 526, 528 (1968) (unworn trousers). By the same token, however, the police may not search an area or container within their exclusive control or outside the detainee's reach. *See, Williams,* 19 Md. App. at 213-14, 310 A.2d at 599.

In the present case the knapsack, though outside Ortiz's immediate control, remained within his conceivable reach. To place Ortiz under arrest Officer Bennett either had to bring the knapsack close to Ortiz or set it down and approach him, placing himself the same distance from the knapsack as Ortiz. Ortiz might have had

a hidden accomplice, or one might have turned the corner at any moment. Under the totality of the circumstances, the knapsack was not within Bennett's exclusive control and he did not act unreasonably in searching it.[8]

Having found Ortiz's gun admissible under the protective weapons search exception, we do not reach the search incident to arrest or plain feel issues and accordingly vacate the intermediate court's plain feel ruling; because it arrived at the correct result, however, we affirm.

*Arthur E. Ross,* Deputy Prosecuting Attorney, for respondent-appellant.

*Mark R. Zenger, (Michael K. Tanigawa,* on the writ and supplemental brief) Deputy Public Defenders, for petitioner-appellee.

DISSENTING OPINION OF NAKAMURA, J.,
WITH WHOM WAKATSUKI, J., JOINS

The Intermediate Court of Appeals, finding no grounds for legitimating the search of defendant's knapsack and the seizure of a handgun as incident to a legal arrest under our case law, strained to place the search and seizure beyond the reach of constitutional protections by fashioning a novel "plain feel" rule from "the limitations and rationale of the plain view rule."[1] *State v. Ortiz,* 4 Haw. App. 143, 164, 662 P.2d 517, 532 (1983). Certiorari was granted "to consider the wisdom of recognizing yet another exception to

---

[8] The trial court's findings as modified do not contain an express finding that the knapsack was within Bennett's exclusive control. Although cross-examined on exactly this point at the suppression hearing, Officer Bennett refused to acknowledge that he had exclusive control over the knapsack. Even if the trial court impliedly made such a finding, however, in view of the totality of circumstances we have a definite and firm conviction it was wrong and therefore overrule it as clearly erroneous. *State v. Joyner,* 66 Haw. 543, 545, 669 P.2d 152, 153 (1983); *Stough v. State,* 62 Haw. 620, 624, 618 P.2d 301, 304 (1980).

[1] "An object may be considered to be 'in plain view' if it can be seized without compromising any interest in privacy." Texas v. Brown, 460 U.S. 730, 103 S. Ct. 1535, 1546 (1983) (Stevens, J., concurring). No interest in privacy is compromised in a "plain view" seizure because the rule applies only when a prior justification for an

the warrant requirement." Deeming it unwise to lend authoritative status to the appellate court's variant of the plain view concept, the majority of this court sanctions the search and seizure on another ground — "the warrantless search here was a valid protective weapons search under *Terry v. Ohio,* 392 U.S. 1 (1968) and its progeny." I agree it would be unwise to adopt a "plain feel" rule, but fail to see how a warrantless search of a closed knapsack that occurred after the threat of harm to the police officer had been neutralized[2] can be justified as a *Terry* search.[3]

---

intrusion is extant. The Supreme Court decision most frequently cited in support of the rule is Coolidge v. New Hampshire, 403 U.S. 443 (1971), which in relevant part states:

What the "plain view" cases have in common is that the police officer in each of them had a prior justification for an intrusion in the course of which he came inadvertently across a piece of evidence incriminating the accused. The doctrine serves to supplement the prior justification — whether it be a warrant for another object, hot pursuit, search incident to lawful arrest, or some other legitimate reason for being present unconnected with a search directed against the accused — and permits the warrantless seizure. Of course, the extension of the original justification is legitimate only where it is immediately apparent to the police that they have evidence before them; the "plain view" doctrine may not be used to extend a general exploratory search from one object to another until something incriminating at last emerges.

403 U.S. at 466 (citation omitted).

[2] At the close of the hearing on the motion for reconsideration of the order suppressing the handgun as evidence, the trial court found the threat of harm to the police officer had been neutralized by his assumption of physical control over the knapsack. The trial court's somewhat rambling decision included these statements:

In this particular case, as in the *Terry* situation, the officer was perfectly right to remove what appeared to him to pose a danger to him. This is akin to the frisk situation. However, once the knapsack was removed, the Court finds there was no need for further protective measures.

and

Number six, when the Officer assumed physical control over the bag and felt the butt of a handgun, the Court finds that at this point the brief investigatory stop turned into a situation where Officer Bennet[t] had enough probable cause to make an arrest . . . .

[3] The Supreme Court's limited ruling in *Terry v. Ohio* was:

We merely hold today that where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous, where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries, and where nothing in the initial stages of the encounter serves to dispel his reasonable fear

I.

The intermediate appellate court summarized the dispositive facts as follows:

On August 12, 1981, at approximately 2:00 a.m., uniformed police officer Brad Bennett was driving in his private, police-subsidized automobile with the customary blue light attached to the roof of the vehicle. While driving in the Wahiawa business area, Bennett saw Ortiz carrying a knapsack in an empty parking lot. Bennett testified that when Ortiz saw him, Ortiz ran towards the side of a building out of his view. After driving into the parking lot, Bennett saw Ortiz seated on the ground with his back to the building.

Bennett approached Ortiz on foot, asked him what he was doing there, and Ortiz responded that he "didn't know." When asked about the knapsack, Ortiz stated that it belonged to him and that nothing was in it. Ortiz then reached out for the knapsack with his right hand, and Bennett immediately grabbed the knapsack from him. While doing so, Bennett felt the butt of a handgun through the thin, canvas-type fabric. Ortiz stood up, and Bennett backed away from him, unzippered the knapsack and saw a handgun and holster therein. Bennett removed the gun from the knapsack, placed Ortiz under arrest, and took him to the police station where the gun was examined and found to be loaded.

4 Haw. App. at 144-45, 662 P.2d at 521. Viewing these facts in the light of controlling precedent, the appellate court like the trial court deduced "the warrantless unzippering of Ortiz's knapsack and the seizure of the gun therefrom . . . [could not] be justified under the incident to a lawful arrest exception to the warrant requirement." *State v. Ortiz*, 4 Haw. App. at 150, 662 P.2d at 522. It therefore tailored a new legal justification for searching the knap-

---

for his own or others' safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him. Such a search is a reasonable search under the Fourth Amendment, and any weapons seized may properly be introduced in evidence against the person from whom they were taken.
392 U.S. at 30-31.

sack without a warrant in a situation where the trial court correctly concluded that none existed.

The majority avoids the labored and circuitous route followed below to validate the search and seizure and arrives at the same result by more expeditious means. It takes an exception to the rule that searches conducted outside the judicial process are per se unreasonable and stretches the narrowly defined exception to cover the situation. The expansion of the *Terry* rule to validate the search of a closed container is no less flawed than the extension of the "plain view" concept the majority implicitly rejects.

## II.

In *Terry v. Ohio, supra,* the Supreme Court established a "stop and frisk" exception to the warrant requirement. Thus a police officer may stop a person on less than probable cause if the officer observes unusual conduct leading to a reasonable suspicion that criminal activity may be afoot and if the officer can point to specific and articulable facts that warrant the suspicion. C. Whitebread, *Constitutional Criminal Procedure* 145 (1978). And a "protective frisk" is authorized if the officer reasonably believes the person may be armed and presently dangerous. *Id.* But "[t]he search for weapons approved in *Terry* consisted solely of a limited patting of the outer clothing of the suspect for concealed objects which might be used as instruments of assault." *Sibron v. New York,* 392 U.S. 40, 65 (1968). The search was valid because it was "reasonably limited in scope to the accomplishment of the only goal which . . . justified its inception — the protection of the officer by disarming a potentially dangerous man." *Id.*

"While *Terry* and *Sibron* were concerned on their facts with the problem of 'stop and frisk' on less than probable cause," we assumed the "rationale underlying those decisions . . . govern[ed] the whole range of problems in warrantless search and seizure cases," *State v. Kaluna,* 55 Haw. 361, 367, 520 P.2d 51, 57 (1974). For we had been instructed that "[t]he scope of the search must be 'strictly tied to and justified by' the circumstances which rendered its initiation permissible. *Warden v. Hayden,* 387 U.S. 294, 310 (1967) (Mr. Justice Fortas, concurring); *see, e.g., Preston v. United States,* 376 U.S. 364, 367-368 (1964); *Agnello v. United States,* 269

U.S. 20, 30-31 (1925)." *Terry v. Ohio,* 392 U.S. at 19. Subsequent decisions of the Court, however, impelled a re-examination of what we thought was fundamental in the law of search and seizure. *State v. Kaluna,* 55 Haw. at 367, 520 P.2d at 57.

We were disturbed particularly by *United States v. Robinson,* 414 U.S. 218 (1973), and its companion, *Gustafson v. Florida,* 414 U.S. 260 (1973). "In each case, under the reasoning of the . . . Supreme Court, the lawful custodial arrest alone gave the police authority to violate whatever privacy interest in the contents of the receptacles the arrestees may have had." *State v. Kaluna,* 55 Haw. at 368 n.5, 520 P.2d at 58 n.5. We were troubled because the decisions "seemingly sanctioned miniscule scrutiny by the police into any and all items an arrestee in custody may happen to have in his possession." *Id.* In the case then at bar, "the search of . . . [the defendant's] body and all personal effects in her possession . . . [would not have] violate[d] her federal constitutional rights since 'the fact of [her] lawful arrest' alone gave the police plenary authority to subject her to a detailed search." *Id.* at 368-69, 520 P.2d at 58 (footnote omitted).

We were not prepared, "as the ultimate judicial tribunal" with "final, unreviewable authority to interpret and enforce the Hawaii Constitution," *id.* at 369, 520 P.2d at 58, to hold "that since a lawful custodial arrest is a significant intrusion into an individual's privacy, further 'lesser' intrusions may be made without regard for their justifications. *Cf. Chambers v. Maroney,* 399 U.S. 42, 61-65 (1970) (Harlan, J., dissenting)." *Id.* at 370, 520 P.2d at 59. "In our view, the right to be free of 'unreasonable' searches and seizures under article I, section 5 (now section 7) of the Hawaii Constitution [was] enforceable by a rule of reason which requires that governmental intrusions into the personal privacy of citizens of this State be no greater in intensity than absolutely necessary under the circumstances." *Id.* at 369, 520 P.2d at 58-59 (footnote omitted). And we summarized our holding and the reasons supporting it in these terms:

> In sum, we hold that a search incident to a valid custodial arrest does not give rise to a unique right to search; instead, the circumstances surrounding the arrest generate the authority to search without a warrant. If these circumstances show a legitimate basis for a search — such as protection of the arresting

officer or preservation of evidence of the crime for which the arrest is made — then a search is lawful only if no broader than necessary in light of the justification. A search which exceeds this scope is a search without reason. And a search without reason we regard as manifestly "unreasonable" under the Hawaii Constitution.

*Id.* at 372, 520 P.2d at 60.

### III.

The trial court regarded *Kaluna* and its teachings as controlling and suppressed the handgun as evidence; in essence, it ruled the search in this case was "broader than necessary in light of the justification" therefor. *See id.* While the majority of this court acknowledges we are expounding the search and seizure provisions of the Constitution of the State of Hawaii rather than the Fourth Amendment,[4] it nonetheless finds *Kaluna* and our "stop and frisk" decisions[5] inapposite. It claims the case at bar is distinguishable on the facts from other cases involving *Terry* searches and implies the intrusion here is not worthy of constitutional regulation.

### A.

If a distinction can be drawn as claimed, it is only because the majority places its own gloss on the facts[6] and overrules a pertinent

---

[4] *See* note 2 in Majority Opinion, 67 Haw. 181, 183, 683 P.2d 822, 829-30 (1984).

[5] Among the decisions deemed inappropriate as precedent are State v. Barnes, 58 Haw. 333, 568 P.2d 1207 (1977); and State v. Onishi, 53 Haw. 593, 499 P.2d 657 (1972).

[6] The finding made by the trial court that the police officer had "exclusive control over the knapsack" is overruled as "clearly erroneous." In the majority's view the following "facts" reflected the situation more accurately:

In the present case the knapsack, though outside Ortiz's immediate control, remained within his conceivable reach. To place Ortiz under arrest Officer Bennett either had to bring the knapsack close to Ortiz or set it down and approach him, placing himself the same distance from the knapsack as Ortiz. Ortiz might have had a hidden accomplice, or one might have turned the corner at any moment. Under the totality of the circumstances, the knapsack was not within Bennett's exclusive control and he did not act unreasonably in searching it.

Majority Opinion, 67 Haw. at 189-90, 683 P.2d at 829 (footnote omitted).

finding of the court charged with the responsibility for factual determinations. The unvarnished facts presented by the record, in the majority's view, are somehow unsuitable or inadequate for judging the validity of a *Terry* search. A possible "hidden accomplice" who "might have turned the corner at any moment," *see* note 6 *supra,* is therefore conjured, presumably to facilitate an application of the "objective standard of reasonableness" it purports to employ. *See* Majority Opinion, 67 Haw. at 188, 683 P.2d at 828.

But we have long maintained "[i]t is for the trial judge as fact-finder to assess credibility of witnesses, including defendants, and to resolve all questions of fact." *Lono v. State,* 63 Haw. 470, 473, 629 P.2d 630, 633 (1981) (citing *State v. Hopkins,* 60 Haw. 540, 592 P.2d 810 (1979)). Furthermore, "[t]he trier of fact may draw all reasonable and legitimate inferences and deductions from the evidence adduced . . . , and findings of the trial court will not be disturbed unless clearly erroneous. *State v. Herrera,* 63 Haw. 405, 629 P.2d 626 (1981)." *Id.* at 473-74, 629 P.2d at 633.

" 'We are not permitted, under that standard, to simply displace the . . . [circuit court's] findings for our own.' *United States v. Minnesota Mining & Manufacturing Co.,* 551 F.2d 1106, 1109 (8th Cir. 1977)." *State v. Yoon,* 66 Haw. 342, 350, 662 P.2d 1112, 1117 (1983). Findings, we have declared, "are not to be disturbed unless, after a review of the whole record, we are 'left with the definite and firm conviction that a mistake has been committed.' *Kim v. State,* 62 Haw. 483, 493, 616 P.2d 1376, 1382 (1980) (quoting *United States v. United States Gypsum Co.,* 333 U.S. 364, 395 (1948)); *accord Honda v. Higa,* 52 Haw. 311, 313, 474 P.2d 708, 710 (1970); *Frey v. Goebert,* 52 Haw. 308, 310, 474 P.2d 537, 538 (1970)." *Id.* Surely, a test demanding a definite and firm belief is not one to be met by mere conjecture about a "hidden accomplice" who was not there.

### B.

Calling on *United States v. Jacobsen,* \_\_\_\_ U.S. \_\_\_\_, 104 S. Ct. 1652, 1663 (1984), for support, the majority also rationalizes the search of defendant's knapsack as a *de minimis* invasion of privacy. We, of course, have not previously characterized the warrantless search of a closed container as a minimal intrusion; nor have we even intimated before that such a search is not regulated by Article

I, § 7 of the Hawaii Constitution. *Kaluna* stands in testimony of our disagreement with the Supreme Court in this regard, *see* 55 Haw. at 368 n.5, 520 P.2d at 58 n.5, and so does *State v. Rosborough,* 62 Haw. 238, 244, 615 P.2d 84, 88 (1980).

I would honor Article I, § 7 and hold the State has not met its burden of justifying the search under one of the few specifically established and well-delineated exceptions to the rule that searches conducted outside the judicial process are per se unreasonable, set aside the decision of the Intermediate Court of Appeals, and affirm the order of the Circuit Court of the First Circuit suppressing the seized firearm as evidence.