214 P.3d 613

STATE of Hawai'i, Respondent/Plaintiff–Appellee

v.

Melody C. LINE, Petitioner/Defendant–Appellant.

No. 27850.

Supreme Court of Hawai'i.

Aug. 11, 2009.

Gerald T. Johnson, Wailuku, for petitioner/defendant-appellant.

Richard K. Minatoya, Deputy Prosecuting Attorney, County of Maui (Brandon L.K. Paredes, Deputy Prosecuting Attorney, County of Maui, on the answering brief) for respondent/plaintiff-appellee.

MOON, C.J., NAKAYAMA, ACOBA, and DUFFY, JJ., and Circuit Judge ALM Assigned Due to a Vacancy.

Opinion of the Court by ACOBA, J.

Petitioner/Defendant–Appellant Melodie C. Line (Petitioner) filed a petition for writ of certiorari on May 22, 2009, seeking review of the judgment of the Intermediate Court of Appeals (ICA) filed on April 28, 2009, pursuant to its April 7, 2009 Summary Disposition Order (SDO)[1] affirming the March 3, 2006 Judgment of Conviction and Probation for Hindering Prosecution in the First Degree under Hawai'i Revised Statutes (HRS) § 710–1029 (Supp.2008),[2] filed by the circuit

---

1. The SDO was filed by Presiding Judge Corinne K.A. Watanabe and Associate Judges Daniel R. Foley and Alexa D.M. Fujise.

2. HRS § 710–1029(1), Hindering prosecution in the first degree, provides in relevant part that [a] person commits the offense of hindering prosecution in the first degree if, with the intent to hinder the apprehension, prosecution, conviction, or punishment of another for a class A, B or C felony or murder in any degree, the person renders assistance to the other person.

court of the second circuit (the court).[3] *See State v. Line*, No. 27850, 120 Hawai'i 281, 2009 WL 924509 (App. Apr. 7, 2009).

We hold that (1) unlawful police conduct is not a defense to a charge of Hindering Prosecution in the First Degree under HRS § 710–1029, however, (2) there was insufficient evidence to sustain a conviction for such an offense in this case, and therefore, the April 28, 2009 judgment of the ICA and the March 3, 2006 judgment of conviction of the court are vacated; but (3) the case is remanded to the court for entry of a judgment of conviction on the lesser included offense of Hindering Prosecution in the Second Degree.

## I.

### A.

On July 12, 2005, police discovered Petitioner's son, Dean Line, Jr. (Dean), with a glass crystal methamphetamine smoking pipe and a tiny Ziploc packet in his vehicle outside his residence.[4] Police did not immediately arrest Dean, who told the officers he would arrange for his dealer to come to his house and make a transaction.[5] Officer Clifton Perreira (Officer Perreira) consented to Dean's setting up a transaction. Dean went into his residence purportedly to arrange the transaction, returned a few minutes later, and sat at the rear of his house. Officers drove to the end of the cul de sac to conduct surveillance, keeping Dean in their view. After ten minutes, Dean went back into his home and did not return. After five more minutes, the officers drove to the back of the house Dean had entered and called for him to come outside. A woman's voice from the house said, "He's not home." Police did not attempt to enter the residence to search for Dean.

The next day, July 13, 2005, in the daytime, Officer Perreira and other officers re-turned to Dean's residence to arrest Dean. Officer Perreira saw Dean when they pulled up to the residence, and Dean immediately ran. Police made visual checks from outside the fence line of the property and called for Dean to come out, and police heard a female voice from inside the house say, "He's not home." Officer Perreira and other officers spoke to Dean's father and sister briefly outside the property, and both Dean's father and sister were argumentative with police. Police left the area and, for a second time, Dean evaded arrest. Police made no arrest attempts at Dean's residence on July 14, 2005.

On July 15, 2005, Officer Perreira, Officer Aylett Wallwork (Officer Wallwork), and Sergeant Kenneth Kikuchi (Sergeant Kikuchi) returned to Dean's residence in the daytime. Police did not have an arrest warrant or a search warrant for the premises at 564 Ekolu Street. When the officers' vehicle stopped in front of Dean's driveway, Dean and another male who was in the front of the house ran into the yard through a front wooden gate on the side of the house.

The officers pursuing Dean were yelling, "Stop, police." Officer Perreira and Sergeant Kikuchi ran around the house towards the back. Officer Perreira and Sergeant Kikuchi were in plain clothes, with shirts tucked in, exposing their guns, Tasers, and badges worn on their belts. Officer Perreira then saw Dean running on a second-story balcony and entering the house through a sliding glass door. Sergeant Kikuchi saw Dean come out from a side door of the residence, yell for Dean's mother, and run to the east side of the house. Sergeant Kikuchi saw Dean scale a makeshift stairway to the second floor balcony and enter the house through a sliding glass door.

Officer Perreira jumped on the balcony, yelled at Dean to stop, and identified the

---

**3.** The Honorable Joseph E. Cardoza presided.

**4.** The pipe tested positive for the presence of methamphetamine. However, there is no evidence that the packet was ever tested.

**5.** The facts essentially reflect findings that were part of the Findings of Fact and Conclusions of Law; Order Denying [Petitioner's] Motion in Li-mine, filed by the court on March 3, 2006. Petitioner does not challenge any of the findings in her Application for Writ of Certiorari. Hence, the findings are binding. *Kelly v. 1250 Oceanside Partners*, 111 Hawai'i 205, 227, 140 P.3d 985, 1007 (2006) ("Generally, a court finding that is not challenged on appeal is binding upon [the appellate court].").

officers as police. Officer Perreira saw Dean's mother, Petitioner, brace herself into the sliding glass door's opening with her hands on the slider and her back against the door frame, blocking Officer Perreira's entry. Officer Perreira told Petitioner to "get out of the way," "we've got to arrest him," and "police." Petitioner did not move and responded, "Get the f—— out of here. You need a search warrant."

Sergeant Kikuchi got to the second-floor balcony and saw Officer Perreira struggling with Petitioner. Sergeant Kikuchi yelled, "Police[, g]et out of the way," but Petitioner refused to move. Sergeant Kikuchi then pushed Officer Perreira into Petitioner, knocking her down and allowing Officer Perreira to enter the house.

Petitioner then grabbed Sergeant Kikuchi's shirt and yelled at him to get out. Sergeant Kikuchi told Petitioner to let go, "We're police," and "We're after Dean, he needs to be arrested." The officers did not locate Dean in the residence or on the property. Officer Perreira noticed his arm was scratched and attributed it to Petitioner's struggle with him at the doorway. Sergeant Kikuchi's shirt sleeve had a tear in it that Petitioner caused while holding his sleeve after he pushed into Petitioner and Officer Perreira at the door.

Officer Perreira and Sergeant Kikuchi were acting under the color of their official authority when attempting to arrest Dean on July 15, 2005.

### B.

On September 6, 2006, Petitioner was charged by indictment with the following counts:

Count One: Hindering Prosecution in the First Degree in violation of [HRS § 710–1029(1) ]; and

Count Two: Assault Against a Law Enforcement Officer in the Second Degree in violation of HRS § 707–712.6 [ (Supp. 2008) [6] ].

On January 3, 2006, Petitioner filed a motion in limine, arguing that the "[p]olice had no right to arrest [Dean] without a warrant." She moved the court for an order "precluding any evidence [from trial] regarding police contact with [Dean], as irrelevant and prejudicial[,]" or alternatively, for a dismissal of her case with prejudice.

The court denied Petitioner's motion in limine. In denying Petitioner's motion, the court determined that the police entry had been lawful. Alternatively, the court stated that "[e]ven if the attempt to arrest Dean on July 15, 2005, is viewed as unlawful, the appropriate remedy can be found in suppression of evidence against Dean or the pursuit of civil damages." The court concluded that "the interest of maintaining a well-ordered society far outweigh [sic] any benefit that might be derived from allowing a person to physically challenge or obstruct the police as they are attempting to arrest another person."

On January 5, 2006, after a jury trial, Petitioner was found guilty of Hindering Prosecution in the First Degree.[7] She was acquitted of the charge of Assault Against a Law Enforcement Officer in the Second Degree.

Petitioner was sentenced to probation, and judgment was entered on March 3, 2006. On March 31, 2006, Petitioner filed a Notice of Appeal. On direct appeal, Petitioner argued,

---

6. HRS § 707–712.6 provides:

Assault against a law enforcement officer in the second degree. (1) A person commits the offense of assault against a law enforcement officer in the second degree if the person recklessly causes bodily injury to a law enforcement officer who is engaged in the performance of duty.

(2) Assault of a law enforcement officer in the second degree is a misdemeanor. The court shall sentence the person who has been convicted of this offense to a definite term of

imprisonment, pursuant to section 706–663, of not less than thirty days without possibility of probation or suspension of sentence.

7. At trial, the court instructed the jury that

[t]he use of force is not justifiable to resist an arrest that the defendant knows is being made by a police officer, *even if the arrest is unlawful.* On the other hand, if the police officer threatens to use or uses unlawful force, the law regarding use of protective force would apply. (Emphasis added.)

*inter alia*, that she had a right to refuse an unlawful intrusion by police into her home.

In its April 7, 2009 SDO, the ICA affirmed Petitioner's conviction and sentence of probation. *See Line*, 2009 WL 924509, at *1. The ICA concluded that the alleged unlawful intrusion by police did not vitiate the Hindering Prosecution charge, stating that

> [a]ssuming, arguendo, the police had no right to enter [Petitioner's] home and arrest her son, the charge of Hindering Prosecution was not affected by the alleged unlawful intrusion and arrest. *State v. Kachanian*, 78 Hawai'i 475, 896 P.2d 931 (App.1995). In *Kachanian*, this court held that an illegal arrest did not affect a "resisting arrest charge." *Id.* Similarly, the alleged unlawful intrusion and arrest in the instant case did not affect the Hindering Prosecution charge.

*Id.*

Petitioner filed an Application for Writ of Certiorari on April 16, 2009, which was dismissed without prejudice on April 20, 2009, because the ICA's judgment had not been filed.

Petitioner subsequently filed a Second Application for Writ of Certiorari to this court on May 22, 2009 (Application), requesting that her conviction of Hindering Prosecution in the First Degree be reversed.

## II.

In her Application, Petitioner presented the following questions:

1. Does a citizen at home, have a right to refuse entry to plain clothes police who have no warrant?

2. Can a citizen be convicted of HRS § 710–1029 Hindering Prosecution in the First Degree, for refusing home entry to police, who have neither arrest nor search warrant?

3. Whether the government has unfettered authority to force entry a home [sic] without any warrant.

(Emphasis omitted.)

Petitioner's second question of whether a citizen can be convicted of HRS § 710–1029 for refusing home entry to police who have no arrest or search warrant, and third question of whether the government has "unfettered authority to force entry into a home without a warrant," are both subsumed by the first question. Therefore, neither need be addressed separately and may be resolved by considering the first question.

## III.

Respondent/Plaintiff–Appellee State of Hawai'i (Respondent) did not file a memorandum in opposition. On July 6, 2009, this court ordered supplemental briefing to address the issue of whether this court should recognize plain error on the part of the court and the ICA on the issue of whether a jury instruction should have been issued on the lesser included offense of hindering prosecution in the second degree, under HRS § 710–1030 (1993). On July 15, 2009, Respondent filed its supplemental brief. On July 16, 2009, Petitioner filed her supplemental brief.

### A.

In Petitioner's supplemental brief, she essentially argued that a hindering prosecution charge in any degree was not supported, and, therefore, "[a] strategic decision was made not to request a lesser included instruction on Hindering Prosecution in the Second Degree[,]" because "[t]o request an instruction on the lesser included offense was seen as a risk that the jury would make a compromise verdict on the lesser included charge rather than acquit."

Petitioner further emphasizes in her supplemental brief the lack of sufficiency of the overall evidence to support either charge. In that connection, Petitioner states that "[a]ccording to police, [Petitioner's] 'criminal act' consisted of standing inside her home and blocking entry to the two plain clothes police who were looking for her son to use in a sting operation."

But, according to Petitioner,

> [s]he testified that she was sitting on the couch with her grandson when suddenly Sergeant Kikuchi "opens the sliding glass door, comes plowing in. I'm sitting on the couch talking to my grandson. He comes in, and he backhands me.... Casey [her

grandson] on the side of me was appalled. He went to—by the pantry area right by the stairway, and he was going, 'What are you doing? Don't do this to my nana' and that's when the officer pushed me back on the couch. I got back up and said, 'What are you doing up here? Get the heck out of here.' "

Based on the foregoing version of the facts, "and the belief that [Petitioner] was credible[,]" Petitioner's counsel did not request the lesser included offense.

## B.

In its supplemental brief, Respondent argues (1) that an instruction on hindering prosecution in the second degree was not warranted, and, (2) alternatively, any error in failing to give such an instruction was harmless. Respondent maintains that "in the instant case, there was no rational basis in the evidence that the offenses committed by [Dean] were felonies [sic,]" [8] because "[t]he evidence was clear that the underlying offenses committed by [Dean] were [felonies]."

## C.

On July 17, 2009, Respondent filed an amended supplemental brief. With regard to whether a lesser included offense instruction should have been given, Respondent acknowledges that "there was evidence that [Petitioner] did not know that the charges pending against her son were felonies[,]" and "[t]hus, it was plain error for the trial court and the ICA not to find that the lesser included offense instruction was necessary."

Respondent went on to admit that "[t]here was no substantial evidence to support [Petitioner's] conviction[,]" because "[b]oth Officer Perreira and [Sergeant] Kikuchi testified that they did not tell [Petitioner] about the nature of the charges pending against her son[,]" and "there was no evidence presented

that she was aware or believed or hoped that the pending charges against her son were felonies." Based on the foregoing, "[Respondent] request[ed] that this matter be reversed and the matter remanded to the trial court for dismissal with prejudice."

Oral argument on the merits was heard on July 20, 2009.

## IV.

This court has stated that

[i]n confession of error cases where the prosecution admits to error, this court has stated that, even when the prosecutor concedes error, before a conviction is reversed, it is incumbent on the appellate court first to ascertain ... that the confession of error is supported by the record and well-founded in law and second to determine that such error is properly preserved and prejudicial. In other words, a confession of error by the prosecution is not binding upon an appellate court, nor may a conviction be reversed on the strength of the prosecutor's official action alone.

*State v. Hoang*, 93 Hawai'i 333, 336, 3 P.3d 499, 502 (2000) (quotation marks, citations and brackets omitted). Thus, we address Petitioner's points of error raised in the application, and consider whether the error conceded by Respondent is supported by the record.

## A.

As to Petitioner's first question, Petitioner maintains that she was "constitutionally protected to stand inside [her] doorway and request plain-clothes police to produce a warrant." She argues that although her actions—standing firm in her doorway and requesting police to produce a warrant—"rendered assistance" [9] under HRS § 710–1029,

---

**8.** Based on the entirety of Respondent's argument, it can be assumed that here it intended to state that there was no rational basis that the offenses were *not* felonies.

**9.** HRS § 710–1028 (1993) defines "rendering assistance" as used in the hindering prosecution statutes, HRS §§ 710–1029 and 710–1030. HRS § 710–1028 provides that

[f]or the purposes of sections 710–1029 and 710–1030, a person renders assistance to another if he:

(1) Harbors or conceals such person;

(2) Warns such person of impending discovery, apprehension, prosecution, or conviction, except this does not apply to a warning given in connection with an ef-

those acts are protected under the Hawaiʻi Constitution.[10] Petitioner argues that the ICA erred by relying solely on *Kachanian*, because *Kachanian* is distinguishable on the law and the facts.

As noted before, the ICA cited *Kachanian* to support its conclusion that "the charge of Hindering Prosecution was not affected by the alleged unlawful intrusion and arrest." *See Line,* 2009 WL 924509, at *1. *Kachanian* held that, although the initial seizure of the appellant and his subsequent arrest were illegal, "such illegality would not affect the 'resisting arrest' charge under HRS § 710–1026." [11] 78 Hawaiʻi at 485, 896 P.2d at 941. In *Kachanian,* the appellant swung and kicked at a police officer during the appellant's arrest at the Kahului Airport. *Id.* at 479, 896 P.2d at 935. The appellant was convicted, *inter alia,* of Resisting Arrest in violation of HRS § 710–1026.[12] *Id.* at 477, 896 P.2d at 933.

According to the *Kachanian* court, under HRS § 710–1026, it is no defense that the officer was making an unlawful arrest if the officer was acting under color of law. *Id.* (citing Commentary to HRS § 710–1026 (1985)). *Kachanian* stated that the rationale underlying the statute "requires that the lawfulness of an arrest be resolved in the courts

because, 'the evils involved in allowing such resistance far outweigh the infrequent and usually minor inconvenience of submitting to any arrest made under color of law and disputing it within the legal framework.'" *Id.* at 485, 896 P.2d at 941 (quoting Commentary to HRS § 710–1026 (1985)).

## B.

Petitioner argues that *Kachanian* is distinguishable from the case at bar because it involves a resisting arrest statute which has "little or no interpretive value in construing the constitutional limits of HRS § 710–1029." According to Petitioner, *Kachanian* is also different on the facts because it involved an airport arrest, not an entry into a home.

However, *Kachanian's* interpretation of the resisting arrest statute is analogous to the case at bar. As Respondent noted, the resisting arrest statute, HRS § 710–1026, is located in the same statutory chapter, entitled "Offenses Against Public Administration," and was enacted at the same time as the hindering prosecution statutes. The commentaries to both the resisting arrest statute and the hindering prosecution statutes describe the prohibited conduct as a form of obstructing justice.[13] Moreover, the

---

fort to bring another into compliance with the law;

(3) Provides such person with money, transportation, weapon, disguise, or other means of avoiding discovery, apprehension, prosecution, or conviction;

(4) Prevents or obstructs, by means of force, deception, or intimidation, anyone from performing an act that might aid in the discovery, apprehension, prosecution, or conviction of such person; or

(5) Suppresses by an act of concealment, alteration, or destruction any physical evidence that might aid in the discovery, apprehension, prosecution, or conviction of such person.

(Brackets omitted.)

**10.** Article I, Section 7 of the Hawaiʻi Constitution provides:

The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches, seizures and invasions of privacy shall not be violated; and no warrants shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the per-

sons or things to be seized or the communications sought to be intercepted.

**11.** The defendant in *Kachanian* was convicted under HRS § 710–1026 (1985). The current version of the statute is substantially the same.

**12.** HRS § 710–1026 (1993 & Supp.2008) provides:

(1) A person commits the offense of resisting arrest if the person intentionally prevents a law enforcement officer acting under color of the law enforcement officer's official authority from effecting an arrest by:

(a) Using or threatening to use physical force against the law enforcement officer or another; or

(b) Using any other means creating a substantial risk of causing bodily injury to the law enforcement officer or another.

(2) Resisting arrest is a misdemeanor.

**13.** The commentary to HRS § 710–1026 provides that "[r]esisting arrest is one of the commonest forms of *obstructing government operation.*" (Emphasis added.) The commentary to HRS §§ 710–1028 through 30 provides, in relevant part:

commentary to the resisting arrest statute provides the following:

*Note that the arrest may be either of the actor or of a third person: the social and individual harms involved are the same in either case. Moreover, it is no defense to a charge under this section that the officer was making an unlawful arrest, provided the officer was acting under color of law.* American jurisdictions have almost universally rejected the common-law doctrine that it is permissible to resist an unlawful arrest with as much force as one has at one's disposal. In a well-ordered society, the evils involved in allowing such resistance far outweigh the infrequent and usually minor inconvenience of submitting to any arrest made under color of law and disputing it within the legal framework. The requirement that the arrest be made under color of the officer's official authority obviates the necessity for a separate section barring such a defense.

Commentary to HRS § 710–1026 (emphasis added). The resisting arrest statute, according to the commentary, requires use of force or risk of bodily injury. The commentary additionally notes that, "[c]ases of interference which do not involve force or risk of bodily injury, but which present serious social dangers are included under §§ 710–1029 and 1030 as cases of hindering prosecution." *Id.* That reference indicates that the hindering prosecution statutes are complementary to the resisting arrest statute, covering a related, yet different type of conduct, inasmuch as hindering prosecution, unlike resisting arrest, covers situations that "present serious social dangers." *See id.* Additional-

These sections ... would have been treated at common law under the heading of accessory after the fact. However, in keeping with the philosophy stated in those earlier sections, liability for conduct relating to an offense which has already been consummated ought to be determined more with regard to the dangerousness of the particular post-offense acts involved than with regard to the dangerousness of the prior substantive offense. Thus, *the conduct involved in these sections is treated sui generis as a form of obstructing justice. The offense of hindering prosecution focuses on the fact that the real danger involved in such conduct is that of subverting or obstructing the administration of justice* . . . .

ly, the resisting arrest statute's application to the arrest of a third person demonstrates the close relation between resisting arrest and the instant case.

Here, the officers were acting under color of law when they attempted to arrest Dean on July 15, 2005. Although the officers were dressed in plain clothes, they had their shirts tucked in, exposing their guns, Tasers, and badges on their belts. The officers also identified themselves as police officers while chasing Dean. When Officer Perreira tried to enter the house to arrest Dean, Petitioner blocked the doorway. Officer Perreira told Petitioner to move, or to "get out of the way," "Police," and "we've got to arrest him," but Petitioner refused to move. Sergeant Kikuchi saw Officer Perreira struggling with Petitioner and pushed Officer Perreira into Petitioner, knocking her down. After Officer Perreira entered the house, Petitioner then grabbed Sergeant Kikuchi's shirt sleeve, ultimately tearing it.

■ Similar to resisting arrest, Petitioner's actions—including her physical struggle with the officers—were intended to prevent police from entering the house and presumably arresting her son. As stated in the resisting arrest statute, "the arrest may be either of the actor *or of a third person:* the social and individual harms involved are the same in either case." Commentary to HRS § 710–1026 (emphasis added). Thus, the essential rationale underlying the resisting arrest statute may apply to situations, such as in the instant case, where an individual hinders a law enforcement officer's apprehension of another.[14]

The underlying conduct involved in these sections is that of rendering assistance to another. Such assistance is defined in terms of *attempts to evade or impede justice at any stage of the apprehension, prosecution, conviction, or punishment of a potential or actual offender* . . . .

(Emphases added.) (Footnote omitted.)

14. Petitioner could have been charged with resisting arrest under HRS § 710–1026, a misdemeanor, but instead was charged with hindering prosecution in the first degree under HRS § 710–1029, which is a Class C felony.

### V.

Petitioner also argues that her conviction under HRS § 710–1029 violates her constitutional right to be secure in her house. She maintains that the police had no right to enter her home without her permission, and thus, "it was not a crime to stand firm and request a warrant."

### A.

■ Petitioner relies in part on *State v. Jim*, 105 Hawai'i 319, 97 P.3d 395 (App.2004). Petitioner states that *Jim* "implied that the government acts must be lawful in order for a violation of HRS § 710–1010(1)[,][15] while interpreting ... [HRS] § 710–1010(1)(a)[,]" an obstructing government operations statute similar to the hindering prosecution statute. According to Petitioner, *Jim* "implied" the requirement that government acts be lawful by stating that,

[c]onsistent with the above precedent, we conclude that Jim's continuing physical obstruction of the *lawful work* by the [County of Hawai'i Department of Water Supply] on the property constituted conduct clearly outside the scope of any first amendment right to freedom of speech.

*Id.* at 334, 97 P.3d at 410 (emphasis added). The Model Penal Code (MPC) language for "Obstructing Administration of Law or Other Governmental Function" is similar to HRS § 710–1010, entitled "Obstructing government operations." Petitioner's argument is unpersuasive inasmuch as the commentary to the MPC provision specifies that an actor will be liable for obstruction even if the government function involved is *unlawful*. *Model*

*Penal Code & Commentaries, Part II* § 242.1 (Comment 7), American Law Institute 1980.[16]

[T]he object of the obstructive conduct must be a government function, which effectively excludes from this section interference with a public servant engaged in patently *ultra vires* activity. But the existence of some technical illegality or irregularity in the operation of government does not relieve the actor from liability for purposive obstruction. In most contexts, this result is quite unexceptional.

*Thus, purposeful obstruction of a law enforcement officer executing a search warrant is a crime even if the warrant is defective and the search consequently unlawful.* This result accords with the trend in recent recodification efforts.

Furthermore, it seems sensible on policy grounds. *Lack of probable cause or other defect in a search warrant may be asserted by appropriate legal means. Self-help is poorly suited to testing the validity of a search, and it also occasions a confrontation with law enforcement officers that may well escalate into violence.* Physical obstruction is not likely to dissuade an officer from executing a warrant valid on its face. It is likely to prompt him to use whatever force is necessary to overcome the interference.

*Id.* (emphases added). Therefore, contrary to Petitioner's argument, it would appear that it is not required that a government action be only lawful for a violation of HRS § 710–1010 to occur.

---

**15.** HRS § 710–1010(1) (Supp.2008), Obstructing government operations, provides in pertinent part:

> (1) A person commits the offense of obstructing government operations if, by using or threatening to use violence, force, or physical interference or obstacle, the person intentionally obstructs, impairs, or hinders:
> (a) The performance of a governmental function by a public servant acting under color of the public servant's official authority; or
> (b) The enforcement of the penal law or the preservation of the peace by a peace officer acting under color of the peace officer's official authority[.]

**16.** HRS § 710–1010 is similar to Model Penal Code § 242.1. MPC § 242.1, Obstructing Administration of Law or Other Governmental Function, provides:

> A person commits a misdemeanor if he purposely obstructs, impairs or perverts the administration of law of other governmental function by force, violence, physical interference of obstacle, breach of official duty, or any other unlawful act, except that this Section does not apply to flight by a person charged with crime, refusal to submit to arrest, failure to perform a legal duty other than an official duty, or any other means of avoiding compliance with law without affirmative interference with governmental functions.

### B.

Petitioner also cites *State v. Garcia*, 77 Hawai'i 461, 887 P.2d 671 (App.1995), which held that HRS § 803-37 [17] "violates the Hawai'i Constitution to the extent that it permits the police to break into the place to be searched if 'bars' to their entrance are not immediately opened." *Id.* at 467, 887 P.2d at 677. Petitioner argues that the application of HRS § 710-1029 similarly violates the Hawai'i Constitution "to the extent that it permits the police to break into a home of a grandmother standing up for her constitutional right against a warrantless invasion."

However, *Garcia* is distinguishable from the case at bar because HRS § 803-37 governs the conduct of an officer who is charged with executing a warrant and expressly allows an officer under certain circumstances to break doors, gates, or other bars to entrance. In other words, while *Garcia* concerns a statute that directly prescribes the procedure for police searches, the present case is about a statute that prohibits certain actions in response to a police search. Therefore, *Garcia* is not applicable or persuasive.

### C.

Contrary to Petitioner's constitutional argument, limiting an individual's ability to resist an unlawful arrest

"does not contribute to or effectuate [a] deprivation of liberty," but only withdraws a remedy which "not infrequently causes far graver consequences for both the officer and the suspect than does the unlawful arrest itself" and requires the arrestee "to submit peacefully to the inevitable and to pursue his available remedies through the orderly judicial process."[18]

Wayne R. LaFave, Jerold H. Israel, Nancy J. King & Orin S. Kerr, *Criminal Procedure* § 3.1(*o*) (3d ed.2007) (quoting *People v. Curtis*, 70 Cal.2d 347, 74 Cal.Rptr. 713, 450 P.2d 33 (1969)). "But, 'circumstances are readily imaginable in which an arrest would be so flagrant an intrusion on a citizen's rights that his resistance would be virtually inevitable,' in which case it well may be that conviction for the resistance would violate due process." *Id.* (quoting *United States ex rel. Horelick v. Criminal Court*, 366 F.Supp. 1140 (S.D.N.Y. 1973)). The same rationale "applies to other forms of self-help undertaken in active resistance to a Fourth Amendment violation, such as forcible opposition to the execution of an invalid search warrant[,]" but that does not mean that criminal punishment may be imposed for a "mere failure to surrender rights." *Id.* (footnotes omitted).

### D.

◼ Petitioner also argues that the circumstances in the present case called for obtaining a warrant before entering Petitioner's residence.[19] The court determined that

---

17. HRS § 803-37 (1993), Power of officer serving, provides that

[t]he officer charged with the warrant, if a house, store, or other building is designated as the place to be searched, may enter it without demanding permission if the officer finds it open. If the doors are shut the officer must declare the officer's office and the officer's business, and demand entrance. If the doors, gates, or other bars to the entrance are not immediately opened, the officer may break them. When entered, the officer may demand that any other part of the house, or any closet, or other closed place in which the officer has reason to believe the property is concealed, may be opened for the officer's inspection, and if refused the officer may break them.

18. It should be noted that unlawful police intrusion into the home is never a "minor inconvenience." *See Kachanian*, 78 Hawai'i at 485, 896 P.2d at 941. Pursuing a civil remedy for such an invasion through judicial processes after the fact,

as suggested by the court, is often ineffective. Civil suits appear to have little effect. *See* Wayne R. LaFave, *Search and Seizure* § 1.10 (4th ed. 2004) ("Much has been written concerning those other remedies for police misconduct which involve proceeding directly against the offending officer, such as tort actions for trespass or battery, criminal prosecutions, and disciplinary action. The conclusion usually reached is that these other remedies are inadequate...." (Footnotes omitted.)).

19. Plainly the officers were not in "hot pursuit" of Dean during their warrantless entry into Petitioner's home. The United States Supreme Court has viewed "hot pursuit" as an exception to the warrant requirement. *Brigham City v. Stuart*, 547 U.S. 398, 403, 126 S.Ct. 1943, 164 L.Ed.2d 650 (2006) (citing *U.S. v. Santana*, 427 U.S. 38, 42–43, 96 S.Ct. 2406, 49 L.Ed.2d 300 (1976)). But this court in *State v. Elderts* stated that "hot pursuit" is not an exception to the

in "pursu[ing] Dean into his home on July 15th," an arrest warrant was not required and that the attempt to effect a warrantless arrest of Dean was lawful. The court's conclusion that the July 15, 2005 attempt to effect an arrest on Dean in entering Petitioner's home was lawful is clearly wrong.

In its decision the court relied on *Keawe*. In *Keawe*, a police officer assigned to investigate prostitution at a nude-dancing establishment paid for and received two "lap dances" by the appellant. 107 Hawai'i at 3, 108 P.3d at 306. The officer did not arrest the appellant that evening; police arrested the appellant twenty days later as part of an arrest raid of the establishment. *Id.* It was held that the warrantless arrest of the appellant was unlawful because police had "probable cause to arrest, [had] no obstacle preventing them from making the arrest, *and* wait[ed] a significant amount of time before making the arrest." *Id.* at 6, 108 P.3d at 309 (emphasis

added). It was also said that "[i]f the police believe that waiting days or weeks to arrest a defendant is the most appropriate action under the circumstances, ... then the police cannot rely upon HRS § 803-5 and must obtain a warrant pursuant to HRS § 803-1." [20] *Id.* at 7, 108 P.3d at 310.

The court held that, unlike *Keawe*, Dean's actions caused the initial delay in his arrest, and the police did not wait a "significant amount of time" from the inception of probable cause to arrest Dean. The court in effect attempted to establish a new exception to the warrant requirement, by concluding that police do not need a warrant to enter a home as long as they do not delay "significant[ly]" in effectuating the arrest. To the contrary, the 63 hours between the inception of probable cause and the July 15, 2005 attempted arrest afforded police ample time to obtain an arrest warrant and they were plainly required

warrant requirement but "merely a criterion to be considered in determining if, given probable cause, exigency exists to justify a warrantless search." 62 Haw. 495, 498, 617 P.2d 89, 92 (1980). However, subsequent cases have implied that "hot pursuit" is an exception to the warrant requirement. *See, e.g., State v. Vallesteros,* 84 Hawai'i 295, 933 P.2d 632 (1997). In *Vallesteros,* this court stated that the "plain view doctrine dictates that: if the original intrusion is justified, such as by consent, *hot pursuit,* warrant or as incident to an arrest, objects sighted in plain view will be admissible so long as the view was inadvertent." *Id.* at 304, 933 P.2d at 641 (quoting *State v. Wallace,* 80 Hawai'i 382, 395, 910 P.2d 695, 708 (1996)) (emphasis added).

In *Elderts,* the officers, responding to an early morning report of burglarized hotel rooms, went to an apartment into which the hotel manager saw two men carry a television. 62 Haw. at 496–97, 617 P.2d at 91. Police knocked repeatedly on the door with no response and learned that the tenant of the apartment was on another island. *Id.* at 497, 617 P.2d at 91. After seeing the lanai door partially open, one of the officers climbed on the balcony, knocked several times, and announced he was a police officer. *Id.* Receiving no response, the officer entered the apartment. *Id.* This court held that "under the circumstances, the constitution does not require the police officers to break off their pursuit to seek a warrant and chance violence or escape by the suspects." *Id.* at 500, 617 P.2d at 93.

The present case is distinguishable, however, as police discovered Dean with a pipe that contained crystal methamphetamine on July 12, 2005, 63 hours before officers located and pursued Dean into his home on July 15, 2005. Un-

der those facts, it does not appear that exigent circumstances existed such that the officers were prevented from obtaining a warrant prior to arresting Dean. Thus, manifestly, a warrant should have been obtained. *See State v. Keawe,* 107 Hawai'i 1, 5–7, 108 P.3d 304, 308–10 (2005) (holding that there is a "temporal restriction on the police's [] power to make a warrantless arrest" and "if the police believe that waiting days or weeks to arrest a defendant is the most appropriate action under the circumstances, ... then the police ... must obtain a warrant").

20. HRS § 803-5 (1993), entitled "By police officer without a warrant," provides in pertinent part as follows:

(a) A police officer or other officer of justice, may, without warrant, arrest and detain for examination any person when the officer has probable cause to believe that such person has committed any offense, whether in the officer's presence or otherwise.

(b) For purposes of this section, a police officer has probable cause to make an arrest when the facts and circumstances within the officer's knowledge and of which the officer has reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution in the belief that a crime has been or is being committed.

HRS § 803-1 (1993), "Arrest; by warrant," provides that:

No arrest of any person shall be made without first obtaining a warrant or other process therefor from some magistrate, except in the cases provided in this chapter or otherwise provided by law.

to do so before invading Petitioner's home. *See Keawe*, 107 Hawai'i at 7, 108 P.3d at 310.

More significantly, the court's reliance on *Keawe* is misplaced, as that case did not deal with entry into a *home*. Hawai'i courts and the United States Supreme Court have both long held that there is a unique interest in privacy in the home. Both this court and the ICA have emphasized the *"tradition of respect for the privacy of the home"* in holding that, "before attempting forcible entry, the police must specifically 'demand entrance,'" under HRS § 803–37,[21] and that, under article I, section 7 of the Hawai'i Constitution,[22] police must give occupants a "reasonable opportunity" to respond when entering a home pursuant to a valid warrant. *State v. Monay*, 85 Hawai'i 282, 284, 285, 943 P.2d 908, 910, 911 (1997) (emphasis added); *Garcia*, 77 Hawai'i at 466, 467, 887 P.2d at 676, 677 (emphasis added).

■ Similarly, this court has adopted the reasoning of the U.S. Supreme Court in *Kyllo v. United States*, 533 U.S. 27, 121 S.Ct. 2038, 150 L.Ed.2d 94 (2001), recognizing that *"'the Fourth Amendment draws a firm line at the entrance to the house, and in the home all details are intimate details*, because the entire area is held safe from prying government eyes.'" *State v. Detroy*, 102 Hawai'i 13, 21, 72 P.3d 485, 493 (2003) (quoting *Kyllo*, 533 U.S. at 37, 40, 121 S.Ct. 2038) (internal quotation marks, citations, brackets, and ellipsis omitted) (emphasis added). In *Detroy*, in agreeing with the U.S. Supreme Court that "the warrantless use of the thermal imager to measure heat emanating from the interior of [the d]efendant's apartment was a prohibited search that violated the Fourth Amendment[,]" and was therefore illegal, *id.*, this court "h[e]ld, additionally, that the same result would be reached on independent state constitutional grounds under article I, section 7 of the Hawai'i State Constitution." *Id.* In so holding, this court emphasized that "[i]t has long been recognized in Hawai'i that generally, a person has an actual, subjective expectation of privacy in his or her home." *Id.* at 22, 72 P.3d at 494 (citation omitted). Because of the special privacy interest in the

home, "[i]t is now settled that any warrantless entrance of a private dwelling by the police can only be justified under the 'exigent circumstances' exceptions to the warrant requirement of the Fourth Amendment[,]" *State v. Fauver*, 1 Haw.App. 3, 5, 612 P.2d 119, 121 (1980), which manifestly were not present in this case.

The ICA in its SDO did not answer this issue, affirming Petitioner's conviction on the holding in *Kachanian*, but only after "assuming arguendo [that] the police had no right to enter Petitioner's home to arrest her son." See *Line*, 2009 WL 924509, at *1 (emphasis added).

In *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961) the United States Supreme Court recognized the paramount importance of the Fourth Amendment and expressed cogent disapproval of the illegal police action in that case. In *Mapp*, the police forcibly entered the petitioner's home after she refused entry absent a warrant, *id.* at 644, 81 S.Ct. 1684, and subsequently discovered "lewd and lascivious books and pictures[,]" for which the petitioner was subsequently prosecuted, *id.* at 643, 81 S.Ct. 1684. The Supreme Court reversed the conviction, holding that the evidence should have been excluded because "[a]t the trial no search warrant was produced by the prosecution, nor was the failure to produce one explained or accounted for[,]" *id.* at 645, 81 S.Ct. 1684, and "quite simply, [ ] conviction by means of unlawful seizures and enforced confessions should find no sanction in the judgments of the courts[,]" *id.* at 648, 81 S.Ct. 1684. The *Mapp* court recognized that

*[n]othing can destroy a government more quickly than its failure to observe its own laws, or worse, its disregard of the charter of its own existence.* As Mr. Justice Brandeis, dissenting, said in *Olmstead v. United States*, [277 U.S. 438, 485, 48 S.Ct. 564, 72 L.Ed. 944 (1928) ]: 'Our government is the potent, the omnipresent teacher. For good or for ill, it teaches the whole people by its example. . . . *If the government becomes a lawbreaker, it breeds contempt for*

---

21. *See supra* note 17.

22. *See supra* note 10.

*law; it invites every man to become a law unto himself; it invites anarchy.'*

*Id.* at 659, 81 S.Ct. 1684 (footnote, citation, and some internal quotation marks omitted) (emphases added).

In this case, as in *Mapp*, police forcibly entered Petitioner's home without a warrant. We do not condone the illegal entry by the police into the home of Petitioner without a warrant and in the absence of any exigent circumstances. There was no conceivable basis in the law to uphold the entry as valid and so we reverse the court's conclusion to the contrary.

## VI.

■ Although the entry by the police into the home was illegal, we are constrained to apply the hindering prosecution statute inasmuch as the risk of dangers associated with physically resisting such an intrusion at the time it occurs, outweighs whatever vindication of personal rights might be accomplished through physical resistance at that moment.

### A.

There is some authority in other jurisdictions holding that an illegal detention or search ordinarily will not bar a conviction for an unlawful response committed by the person subjected to an illegal police action. For example, in *New Jersey v. Casimono*, state troopers conducted pat down searches of the

defendant and his co-defendant after a traffic stop. 250 N.J.Super. 173, 593 A.2d 827, 829 (1991). The defendant and co-defendant resisted, and the defendant threw a bag from the car over the roadway guardrail. *Id.* The defendant was convicted, *inter alia,* of hindering apprehension by destroying or concealing evidence,[23] and resisting arrest. *Id.* at 828–29. The Superior Court of New Jersey, Appellate Division held that the pat down searches of the defendant were illegal. *Id.* at 832. But that court also held that the defendant's "convictions for resisting arrest and hindering apprehension were for new offenses committed subsequent to the unlawful pat down searches and therefore were not subject to the taint of police misconduct." *Id.* at 833.

In *United States v. Ferrone,* the Third Circuit Court of Appeals held that a person does not have a right to forcibly resist the execution of a search warrant by a peace officer or government agent, even though the warrant may subsequently be found invalid. 438 F.2d 381, 390 (3d Cir.1971). In *Ferrone,* the appellant was convicted of, *inter alia,* assaulting, resisting and opposing Internal Revenue Service agents who were attempting to execute a search warrant of his apartment and a search warrant for his person. *Id.* at 383. The appellant contended that the searches were unlawful and therefore he had a right to resist arrest.[24] *Id.* at 387. The Third Circuit stated that

**23.** Hindering apprehension by destroying or concealing evidence is a violation of New Jersey Statutes Annotated 2C:29–3b(1), which provides that
> [a] person commits an offense if, with purpose to hinder his own detention, apprehension, investigation, prosecution, conviction or punishment for an offense or violation of Title 39 of the Revised Statutes or a violation of chapter 33A of Title 17 of the Revised Statutes, he:
> (1) Suppresses, by way of concealment or destruction, any evidence of the crime or tampers with a document or other source of information, regardless of its admissibility in evidence, which might aid in his discovery or apprehension or in the lodging of a charge against him[.]

Although this section of the New Jersey statute concerns hindering one's own apprehension or prosecution, it is similar to Hawai'i's hindering prosecution statutes, which list preventing apprehension and suppressing evidence as prohibited

conduct. HRS § 710–1028(4) and (5) provides that
> [f]or the purposes of sections [710–1029 and 710–1030], a person renders assistance to another if he:
> (4) Prevents or obstructs, by means of force, deception, or intimidation, anyone from performing an act that might aid in the discovery, apprehension, prosecution, or conviction of such person; or
> (5) Suppresses by an act of concealment, alteration, or destruction any physical evidence that might aid in the discovery, apprehension, prosecution, or conviction of such person.

**24.** The *Ferrone* court stated that "despite appellant's insistence that we are dealing with the right to resist an illegal arrest in this case, it is clear that we are really dealing with one's right to resist an *illegal search.*" 438 F.2d at 390 n. 18 (emphasis added).

[s]ociety has an interest in securing for its members the right to be free from unreasonable searches and seizures. Society also has an interest, however, in the orderly settlement of disputes between citizens and their government; *it has an especially strong interest in minimizing the use of violent self-help in the resolution of those disputes.* We think a proper accommodation of those interests requires that a person claiming to be aggrieved by a search conducted by a peace officer pursuant to an allegedly invalid warrant test that claim in a court of law and not forcibly resist the execution of the warrant at the place of search. The *development of legal safeguards in the Fourth, Fifth, Sixth and Fourteenth Amendment fields in recent years has provided the victim of an unlawful search with realistic and orderly legal alternatives to physical resistance.*

*Id.* at 390 (emphases added). The *Ferrone* court, however, expressly stated that it was not deciding whether a person would, under some circumstances, have a right to resist an unlawful warrantless search. *Id.* at 390 n. 19.

In *United States v. Prescott,* the Ninth Circuit Court of Appeals held that a home occupant can refuse admission to an officer who demands entry but presents no warrant, but limited its holding to "passive" refusals rather than forcible resistance. 581 F.2d 1343, 1350–51 (9th Cir.1978). In *Prescott,* federal agents asked the appellant for permission to search her apartment for a mail fraud suspect. *Id.* at 1347. The appellant, who had lied when she told the agents the suspect was not in her apartment, asked the agent if he had a warrant. *Id.* When he replied that he did not, the appellant said nothing in response but "steadfastly declined to unlock her door." *Id.* After another home occupant refused to let the agents enter the apartment, the agents warned that if the door were not unlocked in three seconds they would enter the apartment forcibly. *Id.* The officers kicked the door in and immediately located the suspect. *Id.* The appellant was charged with assisting a federal offender in order to hinder or prevent his apprehension in violation of 18 U.S.C. § 3, which

defines an accessory after the fact. *Id.* at 1346.

The Ninth Circuit held that the appellant's refusal to allow the agents to enter her apartment without a warrant was privileged conduct that should not have been considered as evidence of the crime charged. *Id.* at 1353. The Ninth Circuit stated that,

[h]ad the respondent not objected to the officer's entry of her house without a search warrant, she might thereby have waived her constitutional objections. The right to privacy in the home holds too high a place in our system of laws to justify a statutory interpretation that would impose a criminal punishment on one who does nothing more than respondent did here. . . .

*One cannot be penalized for passively asserting this right,* regardless of one's motivation.

*Id.* at 1351 (emphasis added). However, the Ninth Circuit also stated that had the appellant "forcibly resisted the entry into her apartment, we might have a different case. We express no opinion on that question." *Id.*

**B.**

In the present case, the facts as found by the court in the motion in limine and as indicated by the jury verdict at trial, indicate that Petitioner's conduct exceeded a mere passive assertion of a right against a warrantless search of her home. Unlike the appellant in *Prescott,* Petitioner did not merely refuse to unlock her door; she braced herself into the sliding glass door's opening with her hands on the slider and her back against the door frame, blocking the officer's entry. She responded to the officers' orders to move with words to the effect of "Get the f—— out of here, you need a search warrant." Petitioner continued to refuse the officers' orders to move although they identified themselves as police. Sergeant Kikuchi saw Officer Perreira "struggling" with Petitioner.

After Sergeant Kikuchi pushed Officer Perreira into Petitioner, knocking her down and allowing Officer Perreira to enter the house, Petitioner grabbed Sergeant Kikuchi's shirt and yelled, "Get the f—— out." After the incident was over, Officer Perreira no-

ticed his arm was scratched and attributed it to Petitioner, and Sergeant Kikuchi's shirt sleeve had a tear in it that Petitioner caused while holding his sleeve. Such conduct on the part of Petitioner demonstrates a form of resistance that is more than merely failing to surrender rights. In attempting to hinder the officers' apprehension of her son, Petitioner did not just passively refuse to open the door to her home; she intentionally used physical force to obstruct the officers.

## VII.

■ Despite the foregoing, as Respondent concedes, based on the record in this case, there is insufficient evidence as a matter of law to convict Petitioner of Hindering Prosecution in the First Degree under HRS § 710–1029.

### A.

This court has stated the standard of review for sufficiency of the evidence as follows:

> Evidence adduced in the trial court must be considered in the strongest light for the prosecution when the appellate court passes on the legal sufficiency of such evidence to support a conviction; the same standard applies whether the case was before a judge or jury. The test on appeal is not whether guilt is established beyond a reasonable doubt, but *whether there was substantial evidence to support the conclusion of the trier of fact.* Substantial evidence as to every material element of the offense charged is *credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion.*

*State v. Bayly,* 118 Hawai'i 1, 6, 185 P.3d 186, 191 (2008) (brackets, citations, quotation marks, and internal quotation marks omitted) (emphases added).

### B.

In this case, Petitioner's conviction for hindering prosecution in the first degree, under HRS § 710–1029, hinged on her awareness that Dean was being pursued "for a class A, B, or C felony[.]" HRS § 710–1029. HRS § 710–1029 requires that, in order for a conviction to stand, Petitioner must have acted "with the *intent* to hinder the apprehension . . . of another *for a class A, B, or C felony* [.]" (Emphases added.) HRS § 702–206 (1993), entitled "Definitions of states of mind," provides that, "[a] person acts intentionally with respect to attendant circumstances when he is *aware of the existence of such circumstances* or believes or hopes that they exist." (Emphasis added.) Thus, HRS § 710–1029 requires that Petitioner was "aware of the existence" of the attendant circumstance that Dean was being "apprehen[ded] . . . for a . . . felony."

The court's Instruction 16, regarding the hindering prosecution charge, indicated that Petitioner must have rendered assistance to Dean "with the intent to hinder the apprehension, prosecution, conviction or punishment of that person *for a felony.*" (Emphasis added.) Instruction 17 provided that "[a] person acts intentionally with respect to attendant circumstances when he is *aware of the existence of such circumstances* [.]" (Emphasis added.) Thus, read together, those instructions indicate that the jury had to find that Petitioner was "aware" of the circumstance that Dean was being arrested "for a felony." [25] However, there was no evidence in the trial record that Petitioner was aware of such circumstance.

That attendant circumstance is a vital element of the offense inasmuch as, without it, Petitioner could only have been convicted of the lesser, misdemeanor offense of hindering prosecution in the second degree, pursuant to HRS § 710–1030. Although there was evidence presented that the "charges" against Dean were felonies, there was no evidence presented that Petitioner herself was aware at the time of the conduct at issue that any

---

25. Despite the court's general instructions on this issue, the jury was not specifically instructed that the language in HRS § 710–1029 requiring "a class A, B, or C felony" is an "attendant circumstance." Thus, it is not clear that the jury would have understood that it needed to find that Petitioner was aware of that circumstance in order to sustain a conviction.

crime for which Dean was being pursued was a felony. At trial, Officer Perreira speculated as to "what offenses *would [Dean's]* be under Hawai'i law[,]" stating that

> [w]ell, the crystal methamphetamine *would be* promoting a dangerous drug in the third degree for any amount of crystal methamphetamine. And the pipe and the packet *would actually be* paraphernalia which is promoting prohibited acts related to drug paraphernalia, and they are both Class C felonies.

(Emphases added.) [26] Subsequently, the following exchange transpired upon redirect examination of Officer Perreira by the prosecution:

> [PROSECUTING ATTORNEY SHEPPARD (PROSECUTION)]: The two charges that you just described, prohibited acts related to drug paraphernalia and promoting a dangerous drug in the third degree, what level of crimes are those under Hawai['i law?
>
> [OFFICER PERREIRA]: Felonies, Class C felonies.
>
> Q. Both individually?
>
> A. Yes.

The following recross-examination by defense counsel immediately followed:

> Q. *And you did not inform [Petitioner] about those charges[,] correct?*
>
> A. *Correct.*

(Emphases added.) The court subsequently took judicial notice that those crimes are classified as Class C felonies under the Hawai'i Revised Statutes.[27]

Defense counsel additionally elicited testimony from Sergeant Kikuchi, the only other prosecution witness, that he did not inform Petitioner of the charges:

> Q. Have you ever met [Petitioner] prior to July 15th?
>
> A. Yes.
>
> Q. Now, did you ever tell [Petitioner] that there were charges against her son on July 15th?
>
> A. *No, I did not.*

(Emphasis added.) The prosecution further questioned Petitioner

> Q. Now, you don't watch Dean 24/7; right? He's an adult?
>
> A. He's an adult.
>
> Q. So you really can't account for what he was doing at 9:55 p.m. on July 12th, 2005?
>
> A. No, I was at work then any ways [sic].

Thus, the trial record was absent of any evidence that Petitioner was aware of any particular crime committed by Dean. Instead, there was evidence only that she was generally informed by the officers that "We're after Dean, he needs to be arrested." [28]

26. The jury subsequently submitted a question to Officer Perreira, "What were the two charges?" He replied that "[t]he two charges for Dean Line *would be* prohibited acts related to drug paraphernalia and promoting a dangerous drug in the third degree." (Emphasis added.) No evidence was ever presented as to what the charges against Dean actually *were* or whether felony charges were actually pursued. The commentary to HRS §§ 710–1028 to –1030 provides that "[w]here the underlying offense *is* a class A, B or C felony, hindering prosecution is a class C felony. Where the underlying offense *is* a misdemeanor or petty misdemeanor, *or where culpability on the part of the other with respect to class or grade of the underlying cause cannot be proved, hindering prosecution is a misdemeanor."* (Emphases added.)

27. The following exchange transpired:
[PROSECUTION]: Actually, I'm going to ask the [c]ourt to judicially notice that prohibited acts related to drug paraphernalia and promoting a dangerous drug in the third degree are Class C felonies under Hawai'i law.
[COURT]: Mr. Johnson.
[DEFENSE COUNSEL JOHNSON (JOHNSON)]: I'll object to that.
. . . .
[COURT]: All right. Well, the Hawai'i Revised Statutes provides that those are Class C felonies under the State of Hawai'i, and as a result under the laws of the State of Hawai'i, the [c]ourt will take judicial notice of that. I could also incorporate that into jury instructions if so requested. All right. Thank you.

28. Additionally, the prosecutor made statements in her closing argument that could have led to jury confusion as to what evidence was actually required to convict Petitioner of the first degree offense. In her closing argument, the prosecutor indicated that the court had not only taken notice of the mere fact that the two crimes discussed by Officer Perreira are defined as Class C felonies in the Hawai'i Revised Statutes, but implied that

Based on the foregoing, there was no evidence presented that Petitioner was aware of the attendant circumstance that Dean committed a felony, and thus, there was an insufficient basis for her conviction of a felony under HRS § 710–1029.

### VIII.

#### A.

■ HRS § 701–109(4)(a) (1993) provides that

[a] defendant *may be convicted of an offense included in an offense charged in the indictment or the information.* An offense is so included when:

(a) It is established *by proof of the same or less than all the facts required to establish the commission of the offense charged* [.]

(Emphases added.) HRS § 710–1029 provides:

(1) A person commits the offense of hindering prosecution in the first degree if, with the intent to hinder the *apprehension, prosecution, conviction, or punishment of* another *for a class A, B, or C felony or murder in any degree,* the person renders assistance to the other person.

(2) Hindering prosecution in the first degree is a *class C felony.*

(Emphases added.) Similarly, HRS § 710–1030 provides that:

(1) A person commits the offense of hindering prosecution in the second degree if, with the intent to hinder the *apprehension, prosecution, conviction, or punishment of* another *for a crime,* he renders assistance to such person.

(2) Hindering prosecution in the second degree is a *misdemeanor.*

the court had also taken judicial notice that Dean had actually committed two felonies:

This all kind of started on July 12th *when [Petitioner's] son was found committing two Class C felonies, that was the possession of drug paraphernalia and the possession of crystal methamphetamine packet and the drugs in the pipe as well. So it's two Class C felonies. The judge took judicial notice of that.* And in your instructions, it says that you may—*you may accept judicial notice as proving that outright.*

(Emphases added.) Thus, the two offenses differ only in that the first degree offense requires that the "crime" be a felony or murder, and that HRS § 710–1029 is a felony offense, while HRS § 710–1030 is a misdemeanor. Thus, HRS § 710–1030 is manifestly included in HRS § 710–1029, as "[HRS § 710–1030] is established by proof of *the same or less than all the facts* required to establish the commission of [HRS § 710–1029.]" (Emphasis added.)

#### B.

■ It is established that "if an appellate court determines that the evidence presented at trial was insufficient to support a conviction of a greater offense but sufficient to support a conviction of a lesser included offense, the court may remand for entry of judgment of conviction on the lesser included offense[.]" *Malufau,* 80 Hawai'i at 136, 906 P.2d at 622. For example, in *State v. Mattiello,* this court concluded that

the prosecution adduced *insufficient evidence* that the amount of the methadone mixture sold by Mattiello was "three-eighths ounce or more[,]" [as required for conviction of the greater offense of promoting a dangerous drug in the first degree.] *Because, however, there was substantial evidence that Mattiello distributed methadone "in any amount," we remand for entry of conviction of the lesser included offense of promoting a dangerous drug in the second degree,* in violation of HRS § 712–1242(1)(c)

90 Hawai'i 255, 262, 978 P.2d 693, 700 (1999) (emphases added); *see also State v. Mueller,* 102 Hawai'i 391, 397–98, 76 P.3d 943, 949–50 (2003) ("deem[ing] the evidence insufficient as a matter of law to support a jury's guilty verdict on a greater offense" of sexual assault in the first degree, but concluding that

(Emphases added.) Those statements are misleading inasmuch as the court did not take judicial notice that Dean *committed* those crimes, but *only* that the crimes are *defined* as Class C felonies under the code—a matter proper for judicial notice inasmuch as it can be determined merely by consulting the Hawai'i Revised Statutes. Moreover, the prosecutor's statements incorrectly indicate that the judge's statements were enough to prove that element of the crime "outright," regardless of Petitioner's state of mind.

"the evidence is sufficient to sustain a conviction of the offense of sexual assault in the third degree," and, therefore, "remand[ing] this matter to the circuit court for the entry of a judgment of conviction of the included offense of sexual assault in the third degree" (citation omitted)); *State v. Wallace*, 80 Hawai'i 382, 414–16, 910 P.2d 695, 727–29 (1996) (holding that, "having vacated Wallace's conviction of promoting a dangerous drug in the first degree ... for evidentiary insufficiency, the double jeopardy clause ... bars a retrial of that offense[,]" but concluding that, "there was sufficient evidence presented at trial to support th[e] lesser included offense ... of promoting a dangerous drug in the third degree[,]" and therefore "hold[ing] that, upon remand ... to the circuit court, a judgment should be entered convicting Wallace of promoting a dangerous drug in the third degree" (brackets, ellipsis, and citation omitted)); *State v. Maddox*, 116 Hawai'i 445, 449–50, 173 P.3d 592, 596–97 (App.2007) ("hold[ing] that there was insufficient evidence to prove that [the victim's] injury created a substantial risk of death and therefore vacat[ing] Maddox's conviction for first degree assault[,]" but "[b]ecause ... there was ample evidence to prove that Maddox committed the lesser included offense of second degree assault, [ ] remand[ing] the case with instructions that the circuit court enter a judgment of conviction on the lesser included offense"); *State v. Say*, 95 Hawai'i 169, 176, 19 P.3d 752, 759 (App.2000) (concluding that "the evidence is insufficient to support a conviction of the charged offense of Theft in the Second Degree" but "the evidence is sufficient to support a conviction of the lesser included offense of Theft in the Fourth Degree[,]" and "[a]ccordingly, we vacate ... and remand with instructions to enter a judgment convicting [the defendant] of the petty misdemeanor of Theft in the Fourth Degree"); *State v. Arlt*, 9 Haw.App. 263, 278, 833 P.2d 902, 904 (1992) ("[c]oncluding that [the d]efendant did not use force 'in the course of committing theft' and that First Degree Robbery was thus not proved, [and] vacat[ing the d]efendant's conviction," but,

"as there is overwhelming evidence on the record that [the d]efendant committed the lesser-included offense of Theft in the Fourth Degree, [ ] remand[ing] the case ... with instructions to enter a judgment convicting [the d]efendant of Theft in the Fourth Degree").[29]

### C.

■ In this case, although there was insufficient evidence to support a conviction for hindering prosecution in the first degree, there was sufficient evidence adduced to convict Petitioner of the lesser included offense of hindering prosecution in the second degree. There was evidence adduced that Petitioner used physical force to prevent the officers from pursuing Dean, that the officers were acting under color of law, and that the officers informed Petitioner that they were seeking to arrest Dean. Thus, there was substantial evidence that Petitioner "render[ed] assistance" to Dean "with the intent to hinder the apprehension ... of [Dean] for a crime." *See* HRS § 710–1030. Because the officers informed Petitioner that they were seeking to arrest Dean, there was sufficient evidence that she was aware of the attendant circumstance that Dean was being apprehended for "a crime," as required for the second degree offense.

### IX.

Based on the foregoing, the judgment of the ICA is reversed, the court's March 3, 2006 Order Denying Motion in Limine and Judgment of Conviction are vacated, and the case is remanded to the court for entry of a judgment of conviction on the lesser included offense of Hindering Prosecution in the Second Degree under HRS § 710–1030.

---

**29.** It does not appear that in any of the foregoing cases the lesser included offense of which the defendant was ultimately convicted was charged by the prosecution.